UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

EILEEN SYMS, Individually and as
  Executrix of the Estate of John Syms,               **REPORT**
THE SOMERSET GROUP, INC.,                              **and**
UNITOOL CORPORATION,                          **RECOMMENDATION**
LEW-PORT CONSTRUCTION CORPORATION,
C&S MACHINERY CORPORATION,
SYMS EQUIPMENT RENTAL CORPORATION, and
LEW-PORT ELECTRICAL CORPORATION,

                              Plaintiffs,              **04-CV-316A(F)**

            v.

OLIN CORPORATION,

                              Defendant.
_____
EILEEN SYMS, Individually and as
  Executrix of the Estate of John Syms,
THE SOMERSET GROUP, INC.,
UNITOOL CORPORATION,
LEW-PORT CONSTRUCTION CORPORATION,
C&S MACHINERY CORPORATION,                             **00-CV-732A(F)**
SYMS EQUIPMENT RENTAL CORPORATION, and
LEW-PORT ELECTRICAL CORPORATION,

                              Plaintiffs,

            v.

OLIN CORPORATION,
UNITED STATES DEPARTMENT OF DEFENSE,
DONALD RUMSFELD, in his official capacity as
  Secretary of Defense,
UNITED STATES DEPARTMENT OF THE ARMY,
THOMAS E. WHITE, in his official capacity as
  Secretary of the Army,
UNITED STATES DEPARTMENT OF THE AIR FORCE,
DR. JAMES G. ROCHE, in his official capacity as
  Secretary of the Air Force,
UNITED STATES NUCLEAR REGULATORY
  COMMISSION,
RICHARD A. MESERVE, in his official capacity as
  Chairman of the United States Nuclear Regulatory

Commission, and
THE UNITED STATES OF AMERICA,

                               Defendants.

_____

APPEARANCES:           KNAUF SHAW LLP
                           Attorneys for Plaintiffs
                           ALAN J. KNAUF and
                           LINDA RADKO SHAW, of Counsel
                           1125 Crossroads Building
                           Two State Street
                           Rochester, New York 14614

                           HUSCH & EPPENBERGER, LLC
                           Attorneys for Defendant
                           DAVID R. DRYOFF,
                           MICHAEL D. MONTGOMERY, and
                           MONICA L. FRIES, of Counsel
                           190 Carondelet Plaza
                           Suite 600
                           St. Louis, Missouri 63105

                           HODGSON RUSS, LLP
                           Attorneys for Defendant
                           JERROLD S. BROWN,
                           PAUL I. PERLMAN, and
                           JEFFREY C. STRAVINO, of Counsel
                           One M&T Plaza
                           Suite 2000
                           Buffalo, New York 14203

## JURISDICTION

This action was referred to the undersigned by Honorable Richard J. Arcara on June 2, 2004. The matter is presently before the court on Defendant's motion to dismiss (Doc. No. 4), filed May 28, 2004.

## BACKGROUND

A civil rights action was commenced in this court on August 23, 2000, 00-CV-

0732A(F) ("*Syms I*"), by Plaintiffs Eileen Syms ("Syms") and her now deceased husband John Syms ("John Syms"), The Somerset Group, Inc. ("Somerset"), Unitool Corporation ("Unitool"), Lew-Port Construction Corporation ("Lew-Port Construction"), C&S Machinery Corporation ("C&S"), Syms Equipment Rental Corporation ("Syms Equipment"), and Lew-Port Electrical Corporation ("Lew-Port") (collectively referred to as "Plaintiffs"), against Defendant government contractor Olin Corporation ("Olin" or "Defendant"), as well as various departments and officials of the United States ("the Government Defendants") (collectively referred to as "Defendants").  In particular, Plaintiffs asserts causes of action under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), the Federal Tort Claims Act ("FTCA"), and New York law to recover necessary response costs Plaintiffs allegedly incurred cleaning up hazardous substances on property owned by Plaintiffs ("the Site"), and for the resulting decrease in the value of Plaintiffs' real property based on the presence of the hazardous substances generated on, transported to or deposited onto the Site by Defendants.

In a Decision and Order dated September 30, 2003 (*Syms I* Doc. No. 83) ("September 30, 2003 Decision and Order"), District Judge Arcara adopted the primary recommendations set forth in a Report and Recommendation dated November 27, 2002 (*Syms I*, Doc. No. 71) ("November 27, 2002 Report and Recommendation"), and dismissed Plaintiffs' CERCLA and FTCA claims, declined, pursuant to 28 U.S.C. § 1367(c)(3), to exercise supplemental jurisdiction over the pendent state claims, dismissed the pendent state claims without prejudice, and directed the Clerk of the Court to close the case.  Accordingly, on September 30, 2003, judgment was entered in

favor of Defendants and *Syms I*, Case No. 00-CV-0732, was closed.

On October 27, 2003, Plaintiffs timely appealed the dismissal of *Syms I* to the Second Circuit Court of Appeals.  In their appeal, Plaintiffs challenged the dismissal of the CERCLA and FTCA claims on the merits, and also requested reinstatement of the pendent state claims.

In March 2004, Plaintiffs commenced a new action against Olin in New York Supreme Court, Niagara County, asserting the same state law claims previously dismissed in *Syms I* ("the state court action").[1]  On April 22, 2004, Olin removed the state court action to this court on the basis of diversity jurisdiction,[2] and the action was assigned Case No. 04-CV-0316A(F) ("*Syms II*").[3]

On May 28, 2004, Defendant Olin moved to dismiss the state law claims asserted in *Syms II* for failure to state a claim or, alternatively, to strike portions of the *Syms II* Complaint as irrelevant, immaterial and highly prejudicial.  Also filed on May 28, 2004 were a Memorandum in Support of Motion to Dismiss or, in the Alternative, to Strike (Doc. No. 5)[4] ("Defendant's Memorandum"), and the Declaration of Jeffrey C. Stravino, Esq. (Doc. No. 6) ("Stravino Declaration"), with attached exhibits.

On September 27, 2004, Plaintiffs filed in response to Olin's motion a

---

[1] The precise date that the state court action was filed in New York Supreme Court, Niagara County is not in the record, although the Complaint filed in the state court action is dated March 22, 2004.

[2] Although the record does not indicate the specific date when Plaintiffs filed the state court action, Plaintiffs have not moved to remand the matter based on untimely removal.

[3] A copy of the Complaint filed in the state court action is attached as Exhibit A to the Notice of Removal (*Syms II*, Doc. No. 1)

[4] "Doc. No." references are to those items filed in *Syms II*, unless otherwise noted.

Memorandum of Law in Opposition to Motion to Dismiss (Doc. No. 18) ("Plaintiffs'

Response").  On October 18, 2004, Defendant Olin filed in further support of the motion

a Reply Memorandum in Support of Motion to Dismiss and Motion to Strike (Doc. No.

19) ("Defendant's Reply").

On May 18, 2005, the Second Circuit affirmed the district court's findings in

*Syms I* that Plaintiffs are not eligible to seek contribution under CERCLA § 113(f)

because Plaintiffs have not been sued under either CERCLA § 106 or § 107(a), but left

open for this court to decide whether, in light of *Cooper Indus., Inc. v. Aviall Servs. Inc.*,

543 U.S. 157 (2004), decided after oral argument before the Second Circuit on their

appeal from summary judgment, Plaintiffs could sue Defendants, as PRPs, under

CERCLA § 107(a) to recover "necessary costs" of responding to the release, or

threatened release, of hazardous substances insofar as such costs were "consistent

with the national contingency plan."  *Syms v. Olin Corporation*, 408 F.3d 95, 101, 106-

07 (2d Cir. 2005) (quoting 42 U.S.C. § 9607(a)(4)(B)).  The court further held that

Plaintiffs' radioactive contamination claims under CERCLA are time-barred, some costs

Plaintiffs incurred were not consistent with the National Contingency Plan and, thus, are

not recoverable under CERCLA, and Plaintiffs' claims under the FTCA are time-barred.

*Syms I*, *supra*, 408 F.3d at 101-06.  The Second Circuit, however, vacated and

remanded the district court's grant of summary judgment in favor of Defendants on the

issue of whether Plaintiffs could recover, as necessary response costs under CERCLA

§ 107(a), the costs Plaintiffs incurred in admitting government officials and contractors

to the Site in connection with a Remedial Investigation/Feasibility Study commenced in

1998 and the interim asbestos abatement conducted in 1998.  *Id*. at 106.  Because the

Second Circuit vacated this court's granting in its entirety summary judgment in favor of Defendants, specifically, as to some of the federal claims asserted in *Syms I*, there is no longer any basis for declining to exercise supplemental jurisdiction over the pendent state claims pursuant to 28 U.S.C. § 1367(c)(3), and the pendent state claims in *Syms I* were thus reinstated in this court.

On September 22, 2005, Defendant Olin filed a Supplemental Memorandum in Support of Motion to Dismiss and Motion to Strike (Doc. No. 25) ("Defendant's Supplemental Memorandum").  On November 18, 2005, Plaintiffs filed a Supplemental Reply Memorandum of Law in Opposition to Defendant's Motion to Dismiss and Motion to Strike (Doc. No. 28) ("Plaintiffs' Supplemental Response").  On December 19, 2005, Defendant filed a Reply Supplemental Memorandum in Support of Motion to Dismiss and to Strike (Doc. No. 29) ("Defendant's Supplemental Reply").  Oral argument on Defendant's motion was deemed unnecessary.

Because the pendent state claims raised in *Syms I* are nearly identical to the state law claims before the court in *Syms II* pursuant to diversity jurisdiction, by Order dated February 7, 2005 (*Syms I*, Doc. No. 99, and *Syms II*, Doc. No. 31), *Syms I* and *Syms II* were consolidated.

Based on the foregoing, Defendant's motion (Doc. No. 4) should be GRANTED insofar as Defendant seeks to dismiss all the claims asserted against Defendant Olin pursuant to New York law, and should be DENIED insofar as Defendant seeks, in the alternative, to strike portions of the Complaint as irrelevant, immaterial, impertinent and highly prejudicial.  Alternatively, Defendant's motion to dismiss should be GRANTED in part and DENIED in part insofar as Defendant seeks to dismiss all the claims asserted

against Defendant Olin pursuant to New York law, and should be DENIED insofar as Defendant seeks, in the alternative, to strike portions of the Complaint as irrelevant.

## FACTS[5]

Defendant United States Department of Defense ("the DOD"), consists of various departments, agencies and instrumentalities which are also Defendants in this action including the Department of the Army ("the Army"), and the Department of the Air Force ("the Air Force").  The Nuclear Regulatory Commission ("the NRC"), formerly known as the Atomic Energy Commission ("the AEC"), is an independent agency established by the Energy Reorganization Act of 1974 to regulate civilian use of nuclear materials.[6] The former Lake Ontario Ordnance Works ("the LOOW"), was established by the United States Department of War ("the Department of War"), on 7500 acres of land purchased in 1942 and located in the Towns of Lewiston and Porter, in Niagara County, New York.  The Department of War used 2500 acres of the LOOW ("the Military Site") for construction and operation of a trinitrotoluene ("TNT") plant and related military activities, and the remaining 5000 acres sat idle as a buffer zone between the Military Site and parcels adjacent to the LOOW.

---

[5] Taken from the pleadings and motion papers filed in this action.

[6] Under the Atomic Energy Act of 1954, a single agency, the Atomic Energy Commission, had responsibility for the development and production of nuclear weapons and for both the development and the safety regulation of the civilian uses of nuclear materials.  The Energy Reorganization Act of 1974 split these functions, assigning to one agency, now the Department of Energy, the responsibility for the development and production of nuclear weapons, promotion of nuclear power, and other energy-related work, and assigning to the NRC the regulatory work, which does not include regulation of defense nuclear facilities.  The Energy Reorganization Act also gave the NRC its organizational structure and established its major offices.  The later amendment to the Energy Reorganization Act of 1974 also provided protections for employees who raise nuclear safety concerns.  See Nuclear Regulatory Commission's website, available at http://www.nrc.gov/who-we-are/governing-laws.html#energy.

TNT production at the LOOW ceased in 1943, subsequent to which the Military Site became the principal repository for radioactive and other contaminants generated by the United States Army Corps of Engineers ("the ACOE") in connection with the Manhattan Project, as well as various other Army chemical warfare operations.  The disposal of these wastes often was accomplished through improper methods such as leaving the waste for months in drums along the roadside within the Military Site, placing the waste in a cooling tower not designed to contain hazardous waste, and piling the waste in the open outdoors.  The Government Defendants also dug a series of trenches to drain radioactive waste into one Central Drainage Ditch, from which the waste flowed into several nearby creeks and tributaries.  In 1945, the 5000 undeveloped acres of the LOOW that previously served as a buffer zone were declared excess government property and transferred to the General Services Administration ("the GSA") for disposal to private landowners.

During the 1950s, Defendant Olin Corporation ("Olin"), formerly known as Olin Mathieson Corporation, operated a high performance rocket fuel manufacturing plant at the LOOW, known as Air Force Plant - 68 ("the AF-68 plant").  Olin's rocket fuel manufacturing process used boron and caused contamination by releasing toxic contaminants and explosive contaminants at the LOOW.  Olin's rocket fuel manufacturing contract with the Government was cancelled before the AF-68 plant became fully productive, but Olin remained at the LOOW, pursuant to another contract with the Government, performing decommissioning activities including dumping, burying and burning various chemicals.  The Government also engaged in activities resulting in contamination at the LOOW, including storage, management, disposal and treatment of

various toxic, radioactive, explosive, and petroleum contaminants, as well as asbestos containing material ("ACM").

In 1966, approximately 564 excess acres of the LOOW were conveyed by GSA to the Fort Conti Corporation ("Fort Conti"), which is not a party to this action. The deed by which the Government conveyed the property to Fort Conti contained a restriction intended to run with the land and prohibiting use of the land as a "garbage dump" or for the "deposit [of] any refuse." In 1970, Fort Conti conveyed to Somerset 132 acres of the 564 acres of the LOOW ("the Original Site") it had acquired from the GSA, leaving Fort Conti with 432 acres. Somerset's offices were located on the Original Site.

Upon purchasing the Original Site, Somerset, between 1970 and 1972, invested significant funds to renovate existing buildings and develop an industrial park which was marketed as an "International Trade Center" and became known as the "Lew-Port Industrial Park" ("the Industrial Park"). By 1972, Somerset and Unitool, one of Syms's now defunct companies, had moved into buildings at the Industrial Park, a number of tenants were found for other buildings, and the Industrial Park produced a significant rent flow.

Plaintiffs maintain they had no knowledge of any contamination on the Original Site until 1972 when the New York Department of Health ("the DOH") discovered that radioactive material possibly contaminated the Original Site and issued an order to Plaintiffs ("the 1972 DOH Order" or "Order"), restricting use of the property by directing that no part of the Original Site was to "be developed or used for industrial, commercial or confidential purposes," other than any such use existing at the time of the 1972 DOH Order. The 1972 DOH Order further prohibited anyone other than an agency

authorized by the State or Federal government, acting pursuant to plans approved by New York's Commissioner of Health, from undertaking any procedures to decontaminate the Original Site.  In 1984, the AEC removed some radioactive materials from the LOOW, resulting in a decrease in certain radiation readings.

Plaintiffs maintain that the 1972 DOH Order was devastating to the financial future of the Industrial Park as a local congressman advised Plaintiffs to dissuade their tenants from remaining at the Industrial Park because of the threat of exposure to radioactive contaminants, leaving Somerset with no choice but to abandon its immediate plans for developing the Industrial Park.  In 1974, the DOH issued a supplemental order ("the 1974 DOH Supplemental Order"), removing the restriction on Plaintiffs' further development of the property, except for two small portions of the Original Site referred to as the Central Drainage Ditch and Six Mile Creek.  The 1974 DOH Supplemental Order also required that any new buildings at the Industrial Park be of slab construction, *i.e.*, without any basements, prohibited the construction of schools, hospitals, private homes or residential buildings, and provided that no portion of the Original Site could be sold without the prior written consent of the New York Commissioner of Health.  The reduced scope of restrictions on use and development at the Industrial Park contained in the 1974 DOH Supplemental Order afforded Plaintiffs some additional flexibility in utilizing the property and they began to attract new prospective tenants.  In 1974, however, the Town of Lewiston ("the Town") cut off the water supply and sewer service to the Original Site in 1974 based on a fear that contamination from the Original Site would enter the Town's water lines to the Site if they were left open.  The lack of water and sanitary sewer services to the Original Site

in 1940 rendered the prospect for future use of the Site for industrial and commercial purposes more unlikely.

Meanwhile, shortly after Somerset's purchase of the Original Site, 242 acres of Fort Conti's remaining 432 acres were sold to Chem-Trol Pollution Services, Inc. ("Chem-Trol") ("the Chem-Trol Site"), which was later purchased by Service Corporation of America ("SCA").   Despite the deed restriction on all 564 acres originally conveyed to Fort Conti by the Government in 1966, the Chem-Trol Site was used for a hazardous waste landfill beginning in 1974.  Somerset maintains that such use further diminished its prospective business development opportunities at the Industrial Park.

With all of their assets tied to the Original Site and the restriction on their ability to further develop or use the property because of the 1972 DOH Order and the 1974 DOH Supplemental Order as well as the Town's waste service shut-off, Plaintiffs suffered financial losses leading Somerset to declare bankruptcy in 1980.  At the urging of the Bankruptcy Court, Somerset sold 93 acres of the Original Site to SCA in 1980 ("the 93 acre Former Site"), retaining 39 acres ("the Site").  Somerset's offices are maintained at the Original Site.  The other corporations owned by Syms, including Unitool, Lew-Port Construction, C&S Machinery, Syms Equipment Rental and Lew-Port Electric, are now defunct allegedly because of contamination at the Site and the adjacent LOOW.  Plaintiff Syms assisted her husband, John Syms, with Somerset's daily maintenance at the Site until John Syms's death on October 12, 2001.  Since John Syms's death, Syms has assumed full responsibility for the Site.

Between 1982 and 1984, the United States Department of Energy ("the DOE") consolidated the radioactive contaminants found throughout the LOOW, storing the

material at a 191 acre area known as the Niagara Falls Storage Site ("the NFSS").
Specifically, the radioactive material was placed into a containment cell which consisted
of a lined basement of one of the former LOOW buildings, and then covered with four
feet of clay soil; no leachate collection system was installed around the perimeter of the
building.  Although no part of the Site is within the boundaries of the NFSS, the NFSS is
located one-half mile from the Site, is physically connected to the Site by the Central
Drainage Ditch.  In 1984, a federal contractor performed radioactive cleanup work
which included cutting the water lines on the Site out of fear the radioactive
contamination would enter the lines.  On December 29, 2986, the DOE issued
correspondence advising that the remedial action relating to radioactive contamination
on the Site was complete, and that a formal certificate attesting to the remediation
would be forwarded to Somerset in the near future.  Somerset, however, was not issued
said formal certificate until May 7, 1992.  Furthermore, neither the DOE December 29,
1986 Letter nor the Certificate of the Remedial Action mentions *non*radioactive
contamination at the LOOW or the Site.

Plaintiffs maintain that they first learned of nonradioactive contamination at the
LOOW at an April 1988 public hearing.  The Government has investigated such
nonradioactive contamination at the LOOW on several occasions, although a final
remedy has yet to be selected for it.  A Phase I Remedial Investigation/Feasibility Study
("RI/FS") was commenced at the LOOW in 1998 under the direction of the ACOE.  The
RI/FS, however, was unable to proceed in the area around the AF-68 plant based on
the prior release of toxic and explosive contaminants, allegedly caused by Defendant
Olin, and the presence of asbestos contaminants allegedly buried there by the

Government Defendants during their ownership of the Original Site.  The ACOE also conducted an interim asbestos removal project from portions of the LOOW, including the Site, and remediated the chemical waste sewer lines and TNT contaminants at the Original Site.  Plaintiffs maintain that the Government contractors who performed the interim asbestos removal project destroyed Plaintiffs' property on the Site and that the ACOE and its contractors violated the Clean Air Act, 42 U.S.C. §§ 7401 *et seq*., and other laws governing asbestos removal.

The results of the Phase I RI/FS were first presented to the public at a March 1999 meeting, and disclosed for the first time the presence of toxic and explosive contaminants, including lithium and RDX, an explosive, in groundwater at the Site.  At a Restoration Advisory Board public meeting held on April 12 and July 12, 2000, the ACOE scientists in charge of the NFSS disclosed evidence that the NFSS was then leaking radioactive contamination.  The ACOE scientists also stated that all nearby residents were exposed to airborne radioactive contaminants from the 1940s through 1982 while such material was stored in an open top water silo at the LOOW.

Although the ACOE has continued its investigation of the LOOW, Plaintiffs claim that portions of the Site have yet to be investigated by the ACOE or were not sufficiently investigated, and contend that the slow progress of the work is resulting in further damage to their property.  Such fears prompted Plaintiffs to undertake their own limited investigation into the presence of contamination at the Site, including the Central Drainage Ditch.  Plaintiffs characterize the ACOE's current involvement at the Site as a protracted environmental investigation with no projected date for completion of remediation.

Ever since Plaintiffs were first advised by the DOH in 1972 of the presence of radioactive contamination at the LOOW, Plaintiffs have expended funds in an attempt to determine the extent of contamination at the Site, to prevent people from entering the Site, and to aid in the cleanup of the Site, including purchasing, for $ 17,000, copies of the building plans and specifications of the LOOW and the AF-68 plant ("the as-built drawings") for the Government's use in connection with the removal and remediation of the Site by the ACOE, providing security to prevent entry upon the Site and possible exposure of such persons to radioactive contamination, and incurring attorney fees in connection with determining their rights and responsibilities concerning the contamination of the Site.  Plaintiffs seek reimbursement for such costs Defendants as other potentially responsible parties under § 107(a) for recovery of necessary response costs incurred in remediating the Site, as well as under New York state law.

## DISCUSSION

1.   __Motion to Dismiss__

On a motion to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim, the court looks to the four corners of the complaint and is required to accept the plaintiff's allegations as true and to construe those allegations in the light most favorable to the plaintiff.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Village Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995), *cert. denied*, 519 U.S. 808 (1996);  *Hill v. City of New York*, 45 F.3d 653, 657 (2d Cir. 1995).  The court is required to read the complaint with great generosity on a motion to dismiss.  *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005) ("*All* complaints must be read liberally; dismissal on

14

the pleadings is *never* warranted unless the plaintiff's allegations are doomed to fail under any available legal theory.") (citing cases; italics in original).  *See Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991) (holding a complaint may be dismissed only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." ) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  The issue is not whether a plaintiff is likely to prevail ultimately, "but whether the claimant is entitled to offer evidence to support the claims.  Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test."  *Weisman v. LeLandais*, 532 F.2d 308, 311 (2d Cir.1976) (quoting *Scheuer*, *supra*, at 236).


A.     Statute of Limitations

Olin maintains the applicable three-year statute of limitations, N.Y. Civ. Prac. L. & R. § 214-c, bars Plaintiffs' First, Second, Fourth, Fifth, Sixth, Seventh and Eighth Causes of Action seeking monetary damages as Plaintiffs were aware of the injuries to the Site as a result of contamination no later than February 7, 1993, when the results of a 1992 study about surface soil contamination at the Site were shared with Plaintiffs. Defendant's Memorandum at 4-6.  Olin further maintains that the applicable six-year statute of limitation, N.Y. Civ. Prac. L. & R. § 213, limits Plaintiffs' Third, Ninth and Tenth Causes of Action seeking indemnification, contribution and restitution to the recovery of costs incurred after August 23, 1994.  Defendant's Memorandum at 6-7.  In opposition to the motion, Plaintiff initially argued that insofar as the First, Second, Fourth, Fifth, Sixth, Seventh and Eighth Causes of Action seek monetary damages,

15

such claims were timely under the "two-injury rule" by which the applicable three-year

limitations period was newly triggered upon the discovery, in 1999, of RDX and lithium

contamination in the groundwater of the Site.  Plaintiffs' Response at 2.  However, on

appeal of *Syms I*, the Second Circuit held that Plaintiffs' claims for damages are barred

by the three-year statute of limitations and, further, are not salvaged by the two-injury

rule.  *Syms I*, *supra*, 408 F.3d at 107-11.  Plaintiffs now concede that the First, Second

and Fourth through Eighth Causes of Action are time-barred, but only to the extent that

such claims seek damages, rather than equitable relief, including an injunction requiring

Defendants to conduct further remediation and testing.  Plaintiffs' Supplemental Reply

at 2-3.  Olin, in further support of dismissal, asserts alternative grounds for dismissing

Plaintiff's First, Second and Fourth through Eight Causes of Action even if such claims

are timely insofar as they seek equitable relief.  Defendant's Supplemental Reply at 1-3.

      In considering the appeal of *Syms I*, the Second Circuit observed, *Syms I*, *supra*,

408 F.3d at 109, that in 1986, the New York Legislature enacted N.Y. Civ. Prac. L. & R.

§ 214-c ("§ 214-c" or "the discovery rule")  which, as relevant, provides a three year

statute of limitation for

> an action to recover damages for personal injury or injury to property caused by
> the latent effects of exposure to any substance . . . computed from the date of
> discovery of the injury by the plaintiff or from the date when through the exercise
> of reasonable diligence such injury should have been discovered by the plaintiff,
> whichever is earlier.

N.Y. Civ. Prac. L. & R. § 214-c(2).

Subsequent to the discovery rule's enactment, the New York Court of Appeals stated

that § 214-c was enacted "'to open otherwise closed courthouse doors' kept shut by the

time of the injury rule, but concluded that the legislature had intended to create a single

discovery rule and thereby eliminated the continuing tort doctrine." *Syms I*, *supra*, 408 F.3d at 110 (quoting *Jensen v. General Electric Company*, 623 N.E.2d 547, 549-50 (N.Y. 1993)).   The Second Circuit continued that "§ 214-c had eliminated the need for the doctrine by creating a new regime that carefully balances plaintiffs' interest in recovering damages for undiscovered injuries against defendants' interest in repose." *Syms I*, *supra*, 408 F.3d at 110.   The Second Circuit also found without merit Plaintiffs' argument that New York's "two-injury" rule permits separate causes of action to be brought for soil contamination and groundwater contamination, such that notice, whether actual or constructive, of one injury does not necessarily provide notice of the other. *Id*. at 111 n. 11.   As such, Plaintiffs' knowledge of other nonradioactive soil contamination "should have prompted an investigation" which, based on the New York State Assembly's 1981 public report, would have led to the discovery of the groundwater contamination which Plaintiffs maintains they first discovered in 1999. *Id*. at 111.   Nevertheless, as § 214-c, by its terms, applies only to "actions 'to recover damages,' [§ 214-c] does not alter the availability of injunctive relief or equity under a continuing tort theory." *Syms I*, *supra*, 408 F.3d at 110 n. 10 (quoting *Jensen*, *supra*, at 553, and citing *Bano v. Union Carbide Corp.*, 361 F.3d 696, 713 (2d Cir. 2004)).   As such, Plaintiffs' First, Second and Fourth through Eighth Causes of Action, to the extent they seek equitable relief, are not time-barred.

As to Plaintiffs' Third, Ninth and Tenth Causes of Action, claims for contribution, indemnification and restitution are subject to a six-year statute of limitations.  N.Y. Civ. Prac. L. & R. § 213.  The six-year limitations period for such claims, however, is measured from the time Plaintiffs suffered a loss by paying the debt for which Plaintiffs

allege Olin should be held responsible.  *State v. Stewart's Ice Cream Co.*, 473 N.E.2d 1184, 1187 (N.Y. 1984) (action subject to six-year limitations period based upon "express or implied liability" accrues when the monetary loss is suffered by the party seeking to recover costs).  As such, recovery for contribution, indemnification or restitution generally are time-barred as to any costs Plaintiffs incurred prior to August 23, 1994, *i.e.*, more than six years before *Syms I* was commenced.  As discussed below, however, Discussion, *infra*, at 19-33, the applicable statute of limitations has not yet been triggered as to Plaintiffs' Third and Ninth Causes of Action seeking contribution and indemnification because Plaintiffs have yet to incur any response costs upon being "'cast in damages'" for the cleanup and remediation of its property.  Discussion, *infra*, at 24 (quoting *City of New York v. Lead Industries Association, Inc.*, 644 N.Y.S.2d 919 (App. Div. 1st Dep't 1996)).

Thus, as to the First, Second and Fourth through Eighth Causes of Action, Defendant's motion to dismiss these claims as time-barred should be GRANTED insofar as Plaintiffs seek monetary damages, and should be DENIED insofar as Plaintiffs seek equitable relief.  Further, as to Plaintiffs' Tenth Cause of Action seeking restitution, which is subject to a six-year limitations period, Defendant's motion to dismiss as time-barred should be GRANTED as to the recovery of any costs incurred prior to August 23, 1994, but should be DENIED as to the recovery of any costs incurred after August 23, 1994, for the clean-up of petroleum and non-radioactive

contamination.[7]  However, as to Plaintiffs' Third and Ninth Causes of Action seeking

contribution and indemnification, the statute of limitations has yet to commence running

given that Plaintiffs have not been "cast in damages" for the cleanup and remediation of

their property and, thus, have not incurred any costs as a result of being cast in

damages.

### B.    Contribution, Indemnification and Restitution Requests

Defendant Olin argues that insofar as Plaintiffs' Third, Ninth and Tenth Causes

of Action request contribution, indemnification and restitution, the claims should be

dismissed for failure to state a claim.  Defendant's Memorandum at 7-9.  According to

Olin, the allegations fail to demonstrate that Plaintiffs have incurred any costs by

discharging a duty owed by Olin, in whole or in part, to a third party to investigate, clean

up or respond to petroleum or other non-radioactive contamination.  Defendant's

Memorandum at 7-8.  Plaintiffs argue in opposition that insofar as Plaintiffs incurred

costs in response to petroleum contamination and other damages not recoverable

under CERCLA, Olin owes a duty to third parties, and Plaintiffs sufficiently allege facts

demonstrating they incurred costs, and will incur future costs, responding to both

petroleum and non-radioactive contamination.  Plaintiffs' Response at 5-8.

Contribution, indemnification and restitution are fundamentally distinct concepts.

_____

[7] Insofar as the Second Circuit observed that § 214-c "does not alter the availability of injunctive relief in equity under a continuing tort theory," but that such exception does not help Plaintiffs with regard to the FTCA claims, *Syms I* Complaint ¶¶ 6-7, because Plaintiffs have not sought injunctive relief, *Syms I*, *supra*, 408 F.3d at 110 n. 10, Plaintiffs remind the court that equitable relief against the Government Defendants is not available under the FTCA and, as such, was not sought by Plaintiffs.  Plaintiffs' Supplemental Response at 2.  Defendant has not argued to the contrary.

Contribution enables a joint tortfeasor that has paid more than its equitable share of damages to recover the excess from the other tortfeasors.  The need for contribution arises from the rule of law that tortfeasors are jointly and severally liable for a judgment, meaning that each is responsible for the full amount regardless of culpability.

*Sommer v. Federal Signal Corporation*, 593 N.E.2d 1365, 1372 (N.Y. 1992).

"'The right to contribution is not founded on nor does it arise from contract and only ratable or proportional reimbursement is sought in an action for contribution.'" *McDermott v. City of New York*, 406 N.E.2d 460, 462 (N.Y. 1980) (quoting *McFall v. Compagnie Maritime Belge (Lloyal Royal), S.A.*, 107 N.E.2d 463, 470 (N.Y. 1952). "Any tortfeasor who pays more than its fair share of a judgment - - as apportioned by the factfinder in terms of relative culpability - - may recover the excess from the others." *Sommer*, *supra*, at 1372.

In contrast, "'[t]he right to indemnity, as distinguished from contribution, is not dependent upon the legislative will.  It springs from a contract, express or implied, and full, not partial, reimbursement is sought.'" *McDermott*, *supra*, 406 N.E.2d at 462 (quoting *McFall*, *supra*, 107 N.E.2d at 470.  An action for implied indemnity lies where both the plaintiff and the defendant owe a duty to a third party, and the plaintiff discharges the duty which, as between the plaintiff and the defendant, should have been discharged by the defendant.  *McDermott*, *supra*, at 462 (citing Restatement of the Law of Restitution, § 76).  Put another way, "[w]here payment by one person is compelled, which another should have made * * * a contract to reimburse or indemnify is implied by law." *McDermott*, *supra*, 406 N.E.2d at 462 (quoting *Brown v. Rosenbaum*, 41 N.E.2d 77, 81 (N.Y. 1942)).  "The classic situation giving rise to a claim for indemnity is where one, without fault on its own part, is held liable to a third party by

20

operation of law (frequently statutory) due to the fault of another." *Lead Indus. Ass'n,*
*Inc.*, *supra*, 644 N.Y.S.2d at 922-23 (parenthetical in original).  The duty forming the
basis for liability for a common-law cause of action for contribution or indemnity "arises
from the principle that 'every one is responsible for the consequences of his own
negligence, and if another person has been compelled * * * to pay the damages which
ought to have been paid by the wrongdoer, they may be recovered from him.'" *Raquet*
*v. Braun*, 681 N.E.2d 404, 407 (N.Y. 1997) (quoting *Oceanic Steam Nav. Co. v.*
*Campania Transatlantic Espanola*, 31 N.E. 987, 989 (N.Y. 1892)).

In contrast to contribution and indemnification, a plaintiff seeking restitution
"need not have been under a duty to perform that for which restitution is sought."
*Lead Indus. Ass'n Inc.*, *supra*, 644 N.Y.S.2d at 923 (citing cases).   Rather, a common-
law cause of action for restitution lies where such party, because of an immediate
necessity to protect public decency, health or safety, takes action to fulfill a duty actually
owed by the defendant restitutor.  *Id*.

> 'A person who has performed the duty of another by supplying things or services,
> although acting without the other's knowledge or consent, is entitled to restitution
> from the other if (a) he acted unofficiously and with intent to charge therefor, and
> (b) the things or services supplied were immediately necessary to satisfy the
> requirements of public decency, health or safety.'

Restatement (First) of Restitution § 115 (1937).

Although traditionally a party seeking restitution was required to have acted voluntarily,
it is no longer fatal to a common law cause of action for restitution that the plaintiff's
actions were statutorily required.  *Lead Indus. Ass'n, Inc.*, *supra*, 644 N.Y.S.2d at 922-
23.  Furthermore, "[t]he essential inquiry in any action for unjust enrichment or
restitution is whether it is against equity and good conscience to permit the defendant to

21

retain what is sought to be recovered."  *Paramount Films Distributing Corporation v. State*, 285 N.E.2d 695, 698 (N.Y. 1972).

As stated, Defendant Olin argues in support of dismissal that Plaintiffs have failed to allege that the costs for which contribution, indemnification and restitution are sought were incurred discharging a duty owed, in whole or in part, by Olin to a third party.  Defendant's Memorandum at 7.  According to Olin, Plaintiffs allege only that Olin had a duty to investigate, clean up and respond to the petroleum and other non-radioactive contamination, but that Plaintiffs have failed to allege they incurred any costs by discharging any duty of Olin's to investigate, clean up or respond to petroleum or other non-radioactive contamination.  *Id*. at 7-8.  Olin further maintains that the costs Plaintiffs allegedly incurred were not incurred in response to a hazardous or potentially hazardous situation.  *Id*. at 8.  Plaintiffs argue in opposition to dismissal that Plaintiffs have discharged Olin's duty owed to neighbors and the government not to contaminate the Site and to remediate the Site of the contamination caused by Olin, under New York Environmental Conservation Law (McKinney 2005) ("N.Y. Envtl. Conserv. Law")[8] Articles 27 and 37 governing hazardous wastes and substances, and New York's Oil Spill Law.  Plaintiffs' Response at 6.  Plaintiffs further assert that "[n]ot only have the plaintiffs alleged in their Complaint that they have incurred costs responding to both petroleum and non-radioactive contamination, but they have also alleged they will continue to incur more costs in the future that are necessary to protect the health and environment."  *Id*. at 8.  Plaintiffs denominate as the costs incurred for which

---

[8] Unless otherwise indicated, references to N.Y. Envtl. Conserv. Law are to "McKinney's 2005."

contribution, indemnification and restitution are sought as "the continued guarding the Site, and [*sic*] well as the plaintiffs' continued assistance to consultants and maintenance of the Site to facilitate ongoing environmental investigation activities. Plaintiffs' attorneys continue to review and evaluate the progress of the investigation and/or comment on the lack of investigation activities performed at the Site." *Id*.

In support of the argument that Plaintiffs fail to allege that Plaintiffs, in responding to petroleum and non-radioactive contamination at the Site, incurred costs discharging a duty owed by Defendant Olin to third parties, Olin relies on *Germantown Central School District v. Clark, Clark, Millis & Gillis, AIA*, 743 N.Y.S.2d 599, 605 (App. Div. 3d Dep't 2002), *aff'd*, 719 N.E.2d 398 (N.Y. 2003).  Defendant's Memorandum at 7. In *Germantown Cent. Sch. Dist.*, *supra*, the court, on the plaintiff's motion to amend the pleadings to add claims for indemnification and restitution, considered whether the defendant architectural firm and engineering subcontractor that performed asbestos abatement services for the plaintiff school district, owed a duty to the school district's students and employees which the school district discharged by investigating and partially abating asbestos the defendants had incorrectly certified as having been removed, so as to support the school district's claims for implied indemnification and restitution.  *Germantown Cent. Sch. Dist.*, *supra*, at 604-05.  The court held that the plaintiff school district failed "to provide any basis or authority upon which to impose such a duty on defendants to these third parties where defendants did not manufacture the asbestos but, rather -- at most -- allegedly negligently performed or misrepresented the abatement services for which plaintiff had contracted."  *Id*.  The court continued that the "actual premise" of the plaintiff's claims was that the defendants had breached a

contractual duty owed to the plaintiff by negligently performing professional services, which were "the very duties underlying plaintiff's time-barred tort claims," and, as such, not only could not support the proposed equitable causes of action, but permitting such amendment would essentially allow the plaintiff to circumvent the statute of limitations that barred plaintiff's tort claims "by recasting them in indemnification and restitution language." *Id*. at 605.

In contrast to the principle that contribution, indemnification and restitution may be recovered only where the plaintiff has discharged a duty owed by the defendant to a third party, in *Lead Indus. Ass'n, Inc.*, *supra*, 644 N.Y.S.2d 919, the court held, in the context of an indemnification claim based on common law, that although the "classic situation giving rise to a claim for indemnity is where one, without fault on its own part, is held liable to a third party by operation of law (frequently statutory) due to the fault of another [,] [i]t is the independent duty which the wrongdoer owes to prevent the other from becoming vicariously liable, and cast in damages, to the injured party that is the predicate for the indemnity action and it is not necessary that the indemnitee establish that the indemnitor ever has owed, or currently owes, it a separate duty apart from the duty to indemnify." *Lead Indus. Ass'n, Inc.*, *supra*, at 922-23.  In other words, "the key element of a common-law cause of action for indemnification is not a duty running from the indemnitor to the injured party, but rather is 'a separate duty owed the indemnitee by the indemnitor.'" *Raquet*, *supra*, 681 N.E.2d at 407 (quoting *Mas v. Two Bridges Associates*, 554 N.E.2d 1257, 1263 (N.Y. 1990)).  Similarly, contribution is available regardless of whether culpable parties are allegedly liable for injury under the same or different theories, and the remedy of contribution may be invoked against concurrent,

24

successive, independent, alternative and intentional tortfeasors.  *Raquet*, *supra*, at 407 (citing cases).

The parties have not cited any caselaw addressing whether Olin, as a former lessee of the Site, can be held liable for contribution, indemnification or restitution to Plaintiffs as subsequent landowners of the Site.  Significantly, New York's Court of Appeals has held that under § 181(5) of the Navigation Law, a faultless landowner can "seek contribution from the actual discharger, even though the landowner itself is liable as a discharger under section 181(1)."  *State v. Green*, 754 N.E.2d 179, 183 (N.Y. 2001) (citing *White v. Long*, 650 N.E.2d 836, 838 (N.Y. 1995)).  There is, thus, some support for finding that a claim for contribution, indemnification or restitution may lie against Defendant Olin based on Olin's breach of a duty running to Plaintiffs.  However, the court need not decide this issue because Plaintiffs' claims for contribution, indemnification and restitution are insufficient for other reasons.

Although in discussing whether Plaintiffs' Third, Ninth and Tenth Causes of Action state claims for contribution, indemnification and restitution, the parties have focused on the essential element of whether or not the costs for which Plaintiffs seek contribution, indemnification and restitution were incurred as Plaintiffs discharged a duty owed by Olin, another basic predicate has not been met by Plaintiffs as to their claims for contribution and indemnification.  In particular, claims for contribution and indemnification both require that the plaintiff have been held liable or cast in damages to a third party.  *See Sommer*, *supra*, 593 N.E.2d at 1372 (stating that contribution enables "[a]ny tortfeasor who pays more than its fair share of a *judgment - - as apportioned by the factfinder* in terms of relative culpability - - may recover the excess

from the others") (italics added); *D'Ambrosio v. City of New York*, 435 N.E.2d 366, 368

and 369 (N.Y. 1982) (discussing that historically, "[n]otwithstanding the rigid rules

regarding contribution rights among joint tort-feasors, a common-law right of

indemnification existed, allowing one who was *compelled to pay for the wrong of*

*another* to recover from the wrongdoer the damages paid to the injured party," and that

"where *one is held liable* solely on account of the negligence of another,

indemnification, not contribution, principles apply to shift the entire liability to the one

who was negligent.") (italics added); *McDermott*, *supra*, 406 N.E.2d at 463 n. 4 (noting

that indemnity actions have been permitted in a variety of situations, including such

cases in which a person "has been *held vicariously liable for the tort of another*," or "a

party is *held accountable for another's breach of contract*") (italics added); *Nolechek v.*

*Gesuale*, 385 N.E.2d 1268, 1270 (N.Y. 1978) (permitting a *tortfeasor cast in damages*

*for injuries suffered by infant plaintiff* to seek indemnity or contribution from injured

child's parents when the child's injuries, and the *tortfeasor's consequent tort liability*,

resulted from the parent's negligent entrusting of a dangerous instrument to the child)

(italics added); *Germantown Cent. Sch. Dist.*, *supra*, 743 N.Y.S.2d at 605 (where

"*plaintiff has not been held liable or cast in damages to these third parties, (indeed, no*

*injury to third parties is even alleged*)," the defendants' alleged breach of a duty to such

third parties could not form the basis for plaintiff's indemnification and restitution claims)

(italics added); *Lead Indus. Ass'n, Inc.*, *supra*, 644 N.Y.S.2d at 922-23 ("It is the

independent duty which the wrongdoer owes to prevent the other from becoming

*vicariously liable, and cast in damages, to the injured [third] party* that is the predicate

for the indemnity action.") (italics and bracketed text added).  Significantly, *Germantown Cent. Sch. Dist.*, *supra*, is factually similar to the instant case.

In *Germantown Cent. Sch. Dist.*, *supra*, the appellate court held that the trial court erred in granting plaintiff's motion to amend the complaint to assert an implied indemnification and restitution claim as the plaintiff failed to demonstrate that the new causes of action had any merit.  *Germantown Cent. Sch. Dist.*, *supra*, 743 N.Y.S.2d at 604.  The plaintiff school district's proposed indemnification and restitution claims were premised on the defendant architectural firm's purported duty to third parties - - plaintiff's students and employees - - in failing to properly perform asbestos abatement services for the plaintiff.  *Id*.  On appeal, the court held that not only had "plaintiff fail[ed] to provide any basis or authority upon which to impose such a duty on defendants to these third parties," but "[m]oreover, plaintiff has not been held liable or cast in damages to these third parties (indeed, no injury to third parties is even alleged) and, thus, defendants' alleged breach of a duty to these *third parties* does not, as it must, form the basis for plaintiff's indemnification and restitution claims."  *Id*. at 604-05 (citing cases) (italics in original).  Likewise, here, Plaintiffs have not alleged they have been held liable or cast in damages to any third parties, nor is any injury to third parties alleged.

Nor does the fact that a cause of action for contribution or indemnification is not considered premature if brought by impleader in the main action, *see McDermott*, *supra*, at 462 n. 3 ("it is settled that an indemnity claim may be asserted, by a third-party action, in the main case), change this result as such is not the situation before the court.  Rather, here, Olin is the only Defendant against whom liability is claimed for the

costs Plaintiffs allegedly incurred in connection with the contamination at the Site and,

thus, the instant action is the main case and it is devoid of any third-party claims,

counterclaims or cross-claims seeking to impose any liability against any of the

Plaintiffs as required to support Plaintiffs' otherwise anticipatory contribution and

indemnification claims.  *See Pennsylvania General Insurance Company v. Austin*

*Powder Company*, 502 N.E. 982, 984-85 and n. 2 (N.Y. 1986) (observing that no

indemnification cross-claim existed as to truck lessor who had not sustained any actual

out-of-pocket loss as action has been settled and payment was made on behalf of truck

lessor's behalf by its insurer such that truck lessor's cross-claim seeking indemnification

from truck lessee "must be regarded as one asserted on behalf of the insurer, the real

party in interest here.").  *See also Nolechek, supra*, 385 N.E.2d at 1270-71 (during

wrongful death action alleging defendants negligently created conditions causing

plaintiff's decedent's death, defendants counterclaimed against plaintiff for indemnity

and contribution, asserting negligent entrustment of a dangerous instrument during

main action).  As such, Plaintiffs' claims for contribution and indemnification are

premature.

      A common law claim for restitution does not require that the plaintiff have been

cast held liable or cast in damages to a third party, nor to have acted pursuant to a

duty.  In fact, historically, a determination that a plaintiff sought restitution for costs

incurred in performing a duty the plaintiff owed to a third party would have been fatal to

the claim.  *See Lead Indus. Ass'n Inc.*, *supra*, 644 N.Y.S.2d at 923.  Nevertheless, a

restitution claim does require that the costs the plaintiff incurred were expended in

performing a duty owed by the defendant and that the actions taken by the plaintiff

28

must have been for "things or services supplied [that] were *immediately necessary to satisfy the requirements of public decency, health or safety*."  Restatement (First) of Restitution § 115 (1937) (italics and bracketed text added).  *See e.g., Germantown Cent. Sch. Dist.*, *supra*, 743 N.Y.S.2d at 605 n. 2 (noting plaintiff's restitution claim seeking to recover costs incurred investigating and partially abating asbestos contamination presupposed that plaintiff performed a duty owed by defendants to third parties in acting out of an immediate necessity to preserve public health and safety); *Lead Indus. Ass'n Inc.*, *supra*, at 924 (observing that plaintiff city stated restitution claim against lead paint manufacturer where city alleged that, as owner of building in which lead paint was used, it took immediate action necessary to protect health and safety of residents of its buildings, particularly children, from "well-recognized hazards of lead paint"); *City of New York v. Keene Corp.*, 505 N.Y.S.2d 782, 787 (Sup. Ct. N.Y. Co. 1986) (plaintiff school board entitled to restitution from asbestos manufacturer for amounts expended removing asbestos from school); *aff'd*, 513 N.Y.S.2d 1004 (App. Div. 1st Dep't 1987).   As discussed above, Plaintiffs have failed to allege that any of the costs for which they seek restitution were "immediately necessary to satisfy the requirements of public decency, health, or safety." Restatement (First) of Restitution § 115 (1937).

Rather, with regard to their restitution claim, Plaintiffs allege that they have "taken action necessary to protect the public health and the environment by preventing access to the Site and otherwise responding to the Contamination, and thus ha[ve] fulfilled, in whole or in part, a duty actually owed by Defendant."  *Syms II* Complaint ¶ 145.  Plaintiffs further allege that "[i]t would be against equity and good conscience to

not require Defendant to conduct immediate cleanup of the Site and compensate Plaintiffs for all past and future costs and losses based on their inability to enjoy the use of, or work on, the Site and the Original Site free of any Contamination." *Syms II* Complaint ¶ 146.

Significantly, this court has already held with regard to Plaintiffs' CERCLA claims that many of the claimed costs were not necessary to address a threat to either human health or the environment, as required under CERCLA § 107(a)(4)(B), 42 U.S.C. § 9607(a)(4)(B).  *See* November 27, 2002 Report and Recommendation at 41-55. CERCLA permits the recovery of costs incurred "in response to a threat to the public health or the environment."  November 27, 2002 Report and Recommendation at 43 (citing cases).  In particular, costs incurred are "necessary" under CERCLA, if (1) the costs were incurred in response to a threat to human health or the environment, and (2) the costs were necessary to address such threat.  *Id*.  By its terms, CERCLA's requirement that costs incurred be *necessary* to address a *threat* to human health or the environment is broader, and thus less restrictive, than for a restitution claim which requires that the costs be incurred in acting out of an "*immediate necessity*" to *preserve* the public health and safety.  It thus logically follows that if the claimed costs failed to meet CERCLA's broader test of "*necessary*" to address a *threat* to human health or the environment, the costs likewise fail to meet the requirement to support a restitution claim that the costs were *"immediately necessary"* to *preserve* the public health and safety.

In particular, in considering motions for summary judgment on the merits of Plaintiffs' CERCLA claims, the court held that costs Plaintiffs incurred in securing the

Site, including the installation of a $ 65,000 fence, providing security guards 24-hours a day and, later, guard dogs to prevent people from entering the Site and becoming exposed to radiation, nothing within the record demonstrated that such actions were necessary immediately, or otherwise, to address a threat to human health or the environment given that there was no evidence establishing that there was a regular ingress of people onto the Site prior to the installation of the fence and stationing of security guards and dogs; rather, evidence in the record showed such actions were undertaken to prevent vandalism to the Site. November 27, 2002 Report and Recommendation at 46-47. Thus, no basis exists to support an allegation of necessity and, as discussed, none was alleged by Plaintiffs. Other costs that the court held Plaintiffs failed to establish were necessarily incurred in response to a threat to human health or the environment include (1) the expense of supplying alternative water supplies or sanitary services after the Town of Lewiston Water District discontinued such services to the Site; (2) the value of John Syms's time spent traveling to military installations seeking assistance in cleaning up the property, assisting in preliminary investigations at the Site by providing information regarding the Original Site obtained through review of the "as-built" drawing of the entire LOOW, attending meetings, warning contractors about Site hazards, and physically maintaining the Site by mowing the grass, plowing snow and placing warning signs on Site hazards; (3) legal expenses incurred attempting to identify other parties potentially responsible for contamination at the Site; (4) costs of repairing damage caused by the ACOE contractors during the 1998 asbestos removal project; and (5) monies spent in a limited radiological investigation of the Central Drainage Ditch in the Spring of 2000. November 27, 2002

Report and Recommendation at 41-55.  With one exception, this finding was affirmed by the Second Circuit.  *Syms I*, *supra*, 408 F.3d at 102-06.

Specifically, the Second Circuit vacated summary judgment as to Plaintiffs' claim for the value of the time John Syms spent "actually admitting" government officials and contractors to the site in connection with the RI/FS and the interim asbestos abatement, as an issue of fact existed as to whether such actions caused Plaintiffs to incur necessary response costs.  *Syms I*, *supra*, 408 F.3d at 106.  With regard to the instant motion to dismiss directed to Plaintiffs' restitution claim, however, Plaintiffs fail to allege that the time John Syms spent admitting government officials or contractors to the Site in connection with the RI/FS and asbestos abatement constitutes "supplying things or services" or was "immediately necessary to satisfy the requirements of public decency, health, or safety," as required for a valid restitution claim under applicable state law. Restatement (First) of Restitution ¶ 115 (1937).  Nor is there any indication or allegation that Olin is in any way responsible for the presence of asbestos on the Site, or participated in the interim asbestos abatement.   Accordingly, although the Second Circuit found "a genuine issue of material fact as to whether the Syms incurred necessary [CERCLA] response costs while actually admitting government officials and contractors to the site," and remanded the issue, that same issue is not presented by Plaintiffs in connection with their New York common law restitution claim.

Furthermore, insofar as Plaintiffs seek as restitution monies Plaintiffs anticipate expending in the future for contamination cleanup and medical monitoring, claims for restitution may be brought only to recover expenses already incurred, and do not extend to future costs.  *Alloy Briquetting Corp. v. Niagara Vest, Inc.*, 756 F.Supp. 713,

722-23 (W.D.N.Y. 1991); *State v. Schenectady Chemicals, Inc.*, 479 N.Y.S.2d 1010, 1014 (App. Div. 3d Dep't 1984); *Keene Corp.*, *supra*, 505 N.Y.S.2d at 787.  As such, insofar as Plaintiffs may, in the future, incur any costs that are  "immediately necessary to satisfy the requirements of public decency, health or safety," such costs may not now be awarded as damages on Plaintiffs' restitution claims.

Plaintiffs Third, Ninth and Tenth Causes of Action seeking contribution, indemnification and restitution, thus fail to state claims for the requested relief. Defendant's motion to dismiss on this ground should be GRANTED.


**C.      Injunctive Relief Requests**

In connection with the First through Eighth Causes of Action, Plaintiffs seek an injunction requiring Olin to immediately investigate and cleanup the Site, as well as the entire LOOW.  Defendant argues that the Court is without jurisdiction to grant the requested injunctive relief.  Defendant's Memorandum at 9-12.  Specifically, Defendant maintains that pursuant to CERCLA § 113(h), this court is without jurisdiction to entertain any action in which the requested relief, if granted, would constitute a challenge to a removal or remedial action under CERCLA prior to the completion of the cleanup.  Defendant's Memorandum at 9.  Defendant also maintains that because the ACOE has already initiated an RI/FS at the LOOW, Defendant Olin is also barred by CERCLA § 122(e)(6), 42 U.S.C. § 9622(e)(6) from undertaking any remedial action absent the president's authorization.  *Id*. at 11.  Defendant further maintains with regard to Plaintiffs' Second and Third Causes of Action alleging violations of New York's Oil Spill Law, New York Navigation Law (McKinney 2004) ("N.Y. Nav. Law") § 173 *et seq*.

33

("the Oil Spill Law"), insofar as Plaintiffs may argue that petroleum is excluded from the list of hazardous substances subject to CERCLA liability, such that Defendant's arguments under CERCLA are inapplicable to the Second and Third Causes of Action, such claims must nevertheless be dismissed because the Oil Spill Law does not provide for the requested relief, *i.e.*, permitting members of the public to seek an order requiring cleanup of property.  Defendant's Memorandum at 12.  Rather, as private parties, Plaintiffs' legal options are either to sue for damages, or to conduct a cleanup and then seek "reimbursement."  *Id.*[9] (citing N.Y. Nav. Law §§ 176(8), 181(5)).

Plaintiffs argue in opposition that Plaintiffs' request "for an injunction calling for Olin to immediately investigate and cleanup the Site and all of the LOOW" is not barred by CERCLA § 113(h).  Plaintiff's Response at 9.  While Plaintiffs acknowledge that CERLCA § 113(h) divests a federal court of any jurisdiction to review any challenges to removal or remedial actions pursuant to CERCLA § 104, or to review any order issued pursuant to CERCLA § 106(a), an action that does not call into question the selected remedial or removal plan is not an action "challenging" any CERCLA removal or remedial action.  *Id.*  Plaintiffs further contend that because the only injunctive relief sought is the cleanup of hazardous waste contamination, such relief could not "interfere" with a clean-up Defendant has already indicated it will not undertake.  *Id.* at 10.  Plaintiffs do not address Defendant's assertion, Defendant's Memorandum at 11, that the ACOE's initiation of an RI/FS at the LOOW, including the Site, bars, pursuant

---

[9] Defendant Olin does not specify  what legal theory, *i.e.*, contribution, indemnification or restitution, would support a private cause of action for "reimbursement" after a private party conducts a clean up of property.

to CERCLA § 122(e)(6), 42 U.S.C. § 9622(e)(6), Olin from undertaking any remedial action absent the presidential authorization.  Nor do Plaintiffs argue in opposition to Defendant's assertion that insofar as Plaintiffs seek declaratory relief as to their Second and Third Causes of Action alleging violations of the Oil Spill Law, such relief is not available under that law.

### 1.    CERCLA § 113(h)

"Congress enacted CERCLA to address 'environmental and health risks posed by industrial pollution.'"  *General Electric Company v. Environmental Protection Agency*, 360 F.3d 188, 189 (D.C.Cir. 2004) (quoting *United States v. Bestfoods*, 524 U.S. 51, 55 (1998)).  CERCLA grants "the President and, by delegation, the Administrator of the Environmental Protection Agency ("EPA"), 'broad power to command government agencies and private parties to clean up hazardous waste sites' by or at the expense of the parties responsible for the contamination."  *General Electric Co.*, *supra*, at 189 (quoting *Key Tronic Corp. v. United States*, 511 U.S. 809, 814 (1994)).  Specifically, CERCLA § 104, 42 U.S.C § 9604,

> authorizes EPA, whenever any hazardous substance is released or is threatened to be released into the environment, to undertake two types of response actions: (1) to remove or arrange for the removal of the hazardous substance; and (2) to provide for remedial actions relating to the release or "substantial threat of release" of the substance.  42 U.S.C. § 9604.  Removal actions are short-term remedies, designed to cleanup, monitor, assess, and evaluate the release or threatened release of hazardous substances.  Remedial actions are longer-tern, more permanent remedies to "minimize the release of hazardous substances so that they do no migrate to cause substantial danger to present or future public health or welfare or the environment."  CERCLA § 101, 42 U.S.C § 9601.  EPA is authorized to select a particular response action and develop an administrative record without conducting an adjudicatory hearing. [CERLCA] § 113(k)(2)(c).

*General Electric Co.*, *supra*, at 189 (bracketed material added).

With five exceptions, none of which is relevant here, CERCLA § 113(h), 42 U.S.C. § 9613(h) divests federal courts of jurisdiction over *any* challenges to both CERCLA removal and remedial actions pursuant to 42 U.S.C. § 9604, or to review any order issued under 42 U.S.C. § 9606(a) until such actions are complete.  42 U.S.C. § 9613(h) ("§ 9613(h)").[10]  Courts charged with construing § 9613(h) have recognized it as effecting a "blunt withdrawal of federal [judicial] jurisdiction."  *See Oil, Chemical and Atomic Workers International Union, AFL-CIO v. Richardson*, 214 F.3d 1379, 1382 (D.C.Cir. 2000) (bracketed material added).  See also *Costner v. URS Consultants*, 153 F.3d 667, 674 (8th Cir. 1998)*; Hanford Downwinders Coalition v. Dowdle*, 71 F.3d 1469, 1474 (9th Cir. 1995); *North Shore Gas Co. v. EPA*, 930 F.2d 1239, 1244 (7th Cir. 1991); *Farmers Against Irresponsible Remediation (FAIR) v. EPA*, 165 F.Supp.2d 253, 258 (N.D.N.Y. 2001) ("*FAIR*").  A "challenge" to a CERCLA removal or remedial action has been defined as "one that interferes with the implementation of a CERCLA remedy." *Broward Gardens Tenants Association v. United States Environmental Protection Agency*, 311 F.3d 1066, 1072 (11th Cir. 2002) (citing *Costner*, *supra*, at 675).  "To determine whether a suit interferes with, and thus challenges, a cleanup, courts look to see if the relief requested will impact the remedial action selected."  *Broward Gardens*, *supra*, at 1072.

---

[10] The five enumerated exceptions include (1) actions under CERCLA § 107 to recover response costs or damages or actions for contribution; (2) actions to enforce CERCLA § 106(a) orders or to recover a penalty for violation of such orders; (3) actions for reimbursement under § 106(b)(2); (4) citizen suits under 42 U.S.C § 9659 alleging that the removal or remedial action taken under CERCLA § 104 violated statutory requirements; and (5) actions under § 106 in which the United States has moved to compel a remedial action.  42 U.S.C. § 9613(h)(1)-(5).

Significantly, "[c]ourts interpreting the term 'removal action,' as defined in 42 U.S.C. § 9601(23), have repreatedly held that Congress intended it be given a broad interpretation." *FAIR*, *supra*, 165 F.Supp.2d at 260.  For example, § 9613(h) divested the court of jurisdiction over a claim for injunctive relief consisting of relocation because the EPA could have incorporated such relief into the plan, but chose not to do so, such that granting the request would result in an alteration to the plan.  *See Broward Gardens*, *supra*, 311 F.3d at 1072 ("Asserting that a remedial plan is inadequate because it fails to include a measure that it could have included is challenging the plan for section 113(h) purposes.").  Jurisdiction also has been found lacking where, although a plan has yet to be formulated such that the relief requested by a private party in a legal action would not require alteration of any existing plan, the requested relief nevertheless "would necessarily dictate the imposition of certain conditions in any future plan." *Jach v. American University*, 245 F.Supp.2d 110, 115-16 (D.D.C. 2003) (holding § 9613(h) deprived federal court of jurisdiction over proposed class action against United States alleging government's burial of toxic chemicals and munitions on neighboring property effected unconstitutional taking of plaintiffs' property, where ACOE was in process of developing RI/FS and final remedial plan concerning subject property and was "exploring some of the very same remedies that plaintiffs" sought).

In the instant case, the results of the Phase 1 RI/FS investigation, which were first made public in March 1999 at a public meeting regarding the status of the LOOW investigation, revealed for the first time the presence of toxic and explosive contaminants including lithium and RDX in groundwater at the Site, but that no RDX was found on any other portions of the LOOW.  *Syms II* Complaint ¶¶ 86-87.  At public

meetings of the Restoration Advisory Board ("RAB"), held on April 1 and July 12, 2000, scientists in charge of the NFSS revealed that the NFSS is leaking radioactive contamination. *Id*. ¶ 91. Plaintiffs maintain that despite such disclosures, little, if any, follow up work has been done, "leaving large portions of the Site un-investigated or under investigated." *Id*. ¶ 92. Accordingly, Plaintiffs seek an injunction requiring Olin to immediately investigate and cleanup the Site, as well as the entire LOOW.

However, the undisputed facts establish that in 1988 a Remedial Investigation of the LOOW was commenced by the ACOE and, between 1988 and 1998, numerous studies of the LOOW, including the Site, were conducted by the ACOE. *See Syms I* Complaint ¶¶ 80-82; *Syms II* Complaint ¶¶ 75-78. In 1998, the ACOE commenced a Phase 1 Remedial Investigation/Feasibility Study ("RI/FS") and performed interim asbestos removal at the LOOW. *See Syms I* Complaint ¶ 86; *Syms II* Complaint ¶ 81. Pursuant to § 9613(h), the RI/FS plan that is already in effect at the LOOW constitutes a removal action within the meaning of 42 U.S.C § 9601(23), as contemplated by 42 U.S.C. § 9602(b). Plaintiffs, by requesting an order directing Olin to cleanup hazardous waste contamination at the Site, thus request an alteration of the Phase 1 RI/FS already in place. *See Broward Gardens*, *supra*, 311 F.3d at 1072 ("Asserting that a remedial plan is inadequate because it fails to include a measure that it could have included is challenging the plan for section 113(h) purposes [and defeats jurisdiction]." ) (bracketed text added).

Accordingly, the relief Plaintiffs request would constitute a challenge to the removal action already in place, and the court is without jurisdiction over Plaintiffs' request for injunctive relief directing Olin to immediately investigate and cleanup the

Site, as well as the entire LOOW.  Defendant's motion to dismiss on this ground should be GRANTED.


## 2.    CERCLA § 122(e)(6)

Defendant Olin argues that, pursuant to CERCLA § 122(e)(6), Olin would be barred from complying with any order to remediate the site because an RI/FS has already been initiated.  Defendant's Memorandum at 11.  Plaintiffs have not responded to this argument.

Where the president or a PRP "has initiated a remedial investigation and feasibility study for a particular facility under this Act [CERCLA], no potentially responsible party may undertake any remedial action at the facility unless such remedial action has been authorized by the President."  42 U.S.C. § 9622(e)(6). Pursuant to Executive Orders 12,580, 52 Fed.Reg. 2,923 (1987), and 12,777, 56 Fed.Reg. 54,757 (1991), the president delegated certain functions and responsibilities vested in the president by CERCLA to various executive departments and federal agencies including the Department of Defense ("DOD") and the EPA.  Furthermore, the ACOE is a division of the DOD.

Here, the initiation of the RI/FS by the ACOE precludes any other PRP from undertaking any remedial action at the LOOW without the authorization of the president, or an executive department or federal agency to which such function has been delegated.  42 U.S.C. § 9622(e)(6).  Plaintiffs do not assert that they have obtained the necessary approval for the relief sought in the instant action.  As such,

Plaintiffs' injunctive relief requested for an order directing Olin to immediately remediate the Site is also barred by 42 U.S.C. § 9622(e)(6).

### 3.    The Oil Spill Law

Defendant Olin, in seeking to dismiss Plaintiffs' Second and Third Causes of Action under the Oil Spill Law, insofar as such claims seek declaratory relief on the basis that petroleum is excluded from the list of hazardous substances subject to CERCLA liability thereby preempting such claims, asserts that the Oil Spill Law does not provide for such relief.  Defendant's Memorandum at 12.  Instead, Olin continues, Plaintiffs' only legal options under the Oil Spill Law include undertaking a cleanup and seeking unspecified "reimbursement" from Olin under N.Y. Nav. Law § 176(8) ("§ 176(8)"), or suing Olin for damages under N.Y. Nav. Law § 181(5) ("§ 181(5)").  *Id*. Plaintiffs have not responded in opposition to this contention.

It is alleged in connection with Plaintiffs' Second Cause of Action that, pursuant to § 181(5), "Defendant is strictly liable for the investigation, remediation, cleanup, and removal of the Petroleum Contamination, and all of Plaintiff's associated direct and indirect damages, and Defendant [is] responsible for conducting any remedial activities that may be necessary as a result of Petroleum Contamination."  *Syms II* Complaint ¶ 116.  As relevant, the Oil Spill Law provides that

> Any claim by any injured person for the costs of cleanup and removal and direct and indirect damages based on the strict liability imposed by this section may be brought directly against the person who has discharged the petroleum, provided, however, that damages recoverable by any injured person in such a direct claim based on the strict liability imposed by this section shall be limited to the

damages authorized by this section [181].

N.Y. Nav. Law § 181(5) (bracketed material added).

The damages authorized by § 181 include "all cleanup and removal costs and all direct

and indirect damages, no matter by whom sustained. . . ."  N.Y. Nav. Law § 181(1).  As

such, § 181(5) provides for a private cause of action for contribution to recover only

"cleanup and removal costs," and "direct and indirect damages" as provided for under §

181, but N.Y. Nav. Law § 181(1), which specifies the damages recoverable under § 181

are limited to monetary damages, and § 181 does not provide for any other relief.

Plaintiffs' Second Cause of Action therefore should be dismissed insofar as it seeks

from Defendant Olin relief other than contribution.

Similarly, Plaintiffs allege with regard to the Third Cause of Action that, pursuant

to § 176(8), "Defendant is liable to indemnify or make contribution to Plaintiffs for their

past and future costs of investigation, remediation, cleanup and removal, and response,

and are responsible for investigation, remediation, cleanup and removal of, and

responses to the Petroleum Contamination."  *Syms II* Complaint ¶ 118.  According to §

176(8), however, "every person providing cleanup, removal of discharge of petroleum or

relocation of persons pursuant to this section shall be entitled to contribution from any

other responsible party."  Thus, § 176(8), by its terms, provides only for Plaintiffs to

recover contribution from Defendant.  As such, Plaintiffs' Third Cause of Action should

be dismissed insofar as it seeks from Defendant relief other than contribution.

Plaintiffs' First through Eighth Causes of Action, insofar as they seek injunctive

relief, should thus be dismissed for lack of jurisdiction under CERCLA § 113(h) or,

alternatively, under CERCLA § 122(e)(6).  Furthermore, Plaintiffs' Second and Third

Causes of Action, insofar as they seek relief other than contribution, should be dismissed for failure to state a claim under N.Y. Nav. Law § 176(8) and 181(1) and (5).

### D.      Additional Bases for Dismissal for Failure to State a Claim

In addition to the above discussed reasons why the *Syms II* Complaint should be dismissed in its entirety because none of the relief Plaintiffs request in the state claims can be recovered, Defendant Olin makes additional, alternative arguments, in support of the motion to dismiss.  Defendant's Memorandum at 13-21.  Plaintiffs argue in opposition to each of the alternative arguments.  Plaintiffs' Response at 10-21.

### 1.      First Cause of Action - ECL Article 37

Defendant Olin argues that Plaintiffs' First Cause of Action alleging strict liability under Article 37 of the New York Environmental Conversation Law ("N.Y. Envtl. Conserv. Law")[11] should be dismissed for failure to state a claim because Plaintiffs have failed to either allege a breach of a statutory duty, or that Plaintiffs are authorized to bring an action pursuant to N.Y. Envtl. Conserv. Law Art. 37.  Defendant's Memorandum at 13.  According to Olin, because N.Y. Envtl. Conserv. Law Art. 37 was not enacted until 1986, Plaintiffs cannot rely on it to recover for hazardous substances allegedly released by Olin more than 40 years earlier.  Defendant's Memorandum at 13-14.  Defendant further maintains that N.Y. Envtl. Conserv. Law Art. 37 does not provide for a private cause of action for civil relief.  *Id*. at 14.  Plaintiffs argue in opposition that

---

[11] Unless otherwise noted, references to N.Y. Envtl. Conserv. Law are to "McKinney 1997."

Article 37 provides for a private right of action.  Plaintiffs' Response at 10-11.  Finally,

Defendant Olin argues that even if Plaintiffs can maintain a private cause of action

under Article 37, such action is without any basis as Article 37 does not incorporate any

method by which a private citizen may obtain relief.  Defendant's Memorandum at 14.

Plaintiffs proffer nothing in opposition to this argument.


### a.    Application of N.Y. Envtl. Conserv. Law Article 37

As stated, Olin's first argument on this point is that although N.Y. Envtl. Conserv.

Law § 37-0107 prohibits the storage or release of hazardous substances in

contravention of the rules and regulations promulgated pursuant to the statute, because

Plaintiffs allege only that Olin stored or released hazardous substances more than 40

years ago, well prior to the enactment of N.Y. Envtl. Conserv. Law Art. 37, "[i]t would be

ludicrous to propose that Olin violated Article 37 by failing to abide by prospective rules

and regulations that were promulgated years after Olin's activities."  Defendant's

Memorandum at 13-14.  Plaintiffs have not responded to this argument.

In support of its argument, Olin cites *State v. Schenectady Chemicals, Inc.*, 459

N.Y.S.2d 971 (Sup. Ct. Rensselaer Co. 1983), *aff'd as modified by* 479 N.Y.S.2d 1010

(App. Div. 3d Dep't 1984), where the court stated that where the purpose of a statute

was to prevent, through threat of significant fines, discharges of substances into the

water by persons not licensed for such discharges, the statute's purpose was not

furthered by applying the statute to a discharge that occurred more than 30 years

earlier.  *Schenectady Chemicals, Inc.*, *supra*, 459 N.Y.S.2d at  975-76.   In refusing to

extend the licensing statute to the situation at bar, the court observed that

> [i]t would be ludicrous to expect someone to apply for, much less receive, a permit to allow long-ago dumped chemical wastes to continue to spread through natural processes.  The purpose of the statutes is to prevent, though the threat of significant fines, the dumping of chemical wastes by persons not licensed to do so.  That purpose would not be served by extending the statutes to the present situation.

*Id.* at 975-76.

Significantly, however, at issue in *Schenectady Chemicals, Inc.*, *supra*, 459 N.Y.S.2d 971, was whether the defendant polluter could be held liable for failing to comply with licensing requirements that were not in effect until more than thirty years after the discharges which gave rise to the pollution occurred.  *Id*. at 976.  The factual dissimilarity between *Schenectady Chemical*, *supra*, and the instant case render *Schenectady Chemical* inapposite to the situation presented to this court.

N.Y. Envtl. Conserv. Law § 37-0107 provides that "[n]o person shall store or release to the environment substances hazardous or acutely hazardous to public health, safety or the environment in contravention of rules and regulations promulgated pursuant hereto."  Because the statute, by its terms, does not state whether it is to be applied retrospectively, the court makes such determination according to New York's rules of statutory construction.

"Statutes are generally applied prospectively in the absence of express or necessarily implied language allowing retroactive effect."  *Dorfman v. Leidner*, 565 N.E.2d 472, 474 (N.Y. 1990) (citing McKinney's Cons. Law of N.Y., Book 1, Statutes § 51(b)).  A retroactive statute is defined according to New York law as "one which takes away or impairs vested rights; it is a law which looks backward, affecting acts occurring or rights accruing before it came into force."  McKinney's Cons. Law of N.Y., Book 1,

Statutes § 51(a).  "Generally, statutes are construed as prospective, unless the language of the statute, either expressly or by necessary implication, requires that it be given a retroactive construction."  *Board of Education v. North Bellmore Union Free School District*, 480 N.Y.S.2d 138, 139 (App. Div. 2d Dep't 1984) (citing McKinney's Cons. Law of N.Y., Book 1, Statutes, § 51(b)), *aff'd*, 476 N.E.2d 651 (N.Y. 1985).

It is established New York law that when a statute creates a new cause of action, or attaches a new disability to past transactions, its operation will be judicially construed as being prospective.  *See Weiler v. Dry Dock Sav. Inst.*, 17 N.Y.S.2d 192, 194 (App. Div. 1st Dep't 1940) (holding statute rendering agreements exempting lessors from liability for negligence void does not include agreements executed before statute took effect).  Furthermore, the postponement of a statute's effective date "is some evidence that the Legislature never intended it to be retroactive."  *Mulligan v. Murphy*, 199 N.E.2d 496, 498 (N.Y. 1964); *O'Connor v. Long Island R.R.*, 406 N.Y.S.2d 502, 503 (App. Div. 2d Dep't 1978) (holding that absent clear legislative intent to the contrary, statutes operate only prospectively, particularly where legislature has postponed statute's effective date, unless the statute is intended to ameliorate an injustice and only affects procedures preliminary to suit), *appeal dismissed*, 397 N.E.2d 391 (N.Y. 1979).  Applying these statutory construction rules in the instant case establishes that N.Y. Envtl. Conserv. Law § 37-0107 is not retroactively applicable to Olin's alleged conduct.

First, although enacted in 1972, N.Y. Envtl. Conserv. Law § 37-0107 was made effective as of June 5, 1973, Laws 1973, chapter 400 § 94, and, thus, the postponement of the statute's effective date weighs against any retroactive application.  *Mulligan*, *supra*, 199 N.E.2d at 498.  Second, significantly, nothing within the language

of the statute indicates any legislative intent for retroactive application.  *Dorfman*, *supra*,

565 N.E.2d at 474; *North Bellmore Union Free Sch. Dist.*, *supra*, 480 N.Y.S.2d at 139.

Moreover, N.Y. Envtl. Conserv. Law § 37-0107, insofar as it prohibits the storage or

release of substances hazardous to the environment or acutely hazardous to public

health, safety or the environment, creates a new cause of action, requiring the statute

be construed only prospectively.  *Weiler*, *supra*, 17 N.Y.S.2d at 194.  In the absence of

anything supporting a retroactive application of N.Y. Envtl. Conserv. Law § 37-0107,

this claim, Plaintiffs' First Cause of Action, should be DISMISSED.


### b.    Private Right of Action

Alternatively, should the District Judge disagree with the recommendation to

dismiss Plaintiffs' First Cause of Action because N.Y. Envtl. Conserv. Law § 37-0107 is

not applicable to Defendant Olin's alleged actions, the court considers whether § 37-

0107 provides for a private right of action as asserted by Plaintiffs. In particular,

Defendant Olin maintains that N.Y. Envtl. Conserv. Law Art. 37 does not provide for a

private cause of action for civil relief and, thus, that Plaintiffs, as private parties, are not

of the class of persons authorized to bring a claim pursuant to N.Y. Envtl. Conserv. Law

Art. 37.  Defendant's Memorandum at 14.  Plaintiffs argue in opposition that Article 37

provides for a private right of action.  Plaintiffs' Response at 10-11.

Olin, in support of its argument, points to the fact that N.Y. Envtl. Conserv. Law

Art. 37 neither expressly nor impliedly incorporates any method by which a private

citizen may obtain relief for a violation of such law.  Defendant's Memorandum at 14.

Rather, insofar as the statute authorizes New York's Department of Environmental

Conservation ("the DEC") to promulgate and enforce the rules necessary to implement

the statute, only the DEC may maintain a cause of action for violations of the statute.

Defendant's Memorandum at 14 (citing N.Y. Envtl. Conserv. Law § 37-0105).  Plaintiffs,

in opposition to this argument, rely on two cases in which a private cause of action was

found to exist under Article 37, and urges this court to follow such precedent.  Plaintiffs'

Response at 11 (citing *Berens v. Cook*, 694 N.Y.S.2d 684 (App. Div. 2d Dep't 1999),

and *Emerson Enterprises, LLC v. Kenneth Crosby Acquisition Corp.*, 2004 WL 1454389

(W.D.N.Y. June 23, 2004).

        In New York, a private party is entitled to bring a cause of action for a statutory

violation only if the relevant statute provides for such action.  *Carrier v. Salvation Army*,

667 N.E.2d 328, 329 (N.Y. 1996) (plaintiffs may seek relief "'only if a legislative intent to

create such a right of action is fairly implied in the statutory provisions and their

legislative history.'") (quoting *Brian Hoxie's Painting Co. v. Cato-Meridian Cent. Sch.*

*Dist.*, 556 N.E.2d 1087, 1089 (N.Y. 1990) (additional internal citation and quotation

marks omitted).  Whether a New York statute provides for a private cause of action

depends on three factors, including:

> (1) whether the plaintiff is one of the class for whose particular benefit the statute
> was enacted; (2) whether recognition of a private right of action would promote
> the legislative purpose; and (3) whether creation of such a right would be
> consistent with the legislative scheme.

*Carrier*, *supra*, 667 N.E.2d at 330 (quoting *Sheehy v. Big Flats Community Day, Inc.*,
541 N.E.2d 18, 20 (N.Y. 1989)).

The third factor is considered the most critical.  *Brian Hoxie's Painting Co.*, *supra*, 556

N.E.2d at 1089.  In the instant case, although the first two prongs of the test are

arguably met, the third prong is not satisfied because creation of a private right of action

would not be consistent with the legislative scheme of Art. 37.

Specifically, as to the first factor, insofar as § 37-0107 prohibits storing or releasing into the environment substances hazardous to public health, safety or the environment in contravention of the rules and regulations promulgated pursuant to Art. 37, the statute is intended to protect Plaintiffs from the health and safety dangers of improper storage and release of such substances.  *See Sheehy*, *supra*, 541 N.E.2d at 21 (observing that  New York Penal Law statute criminalizing the provision of alcoholic beverages to children under the legal age to purchase such beverages "was unquestionably intended, as least in part, to protect such individuals from the health and safety dangers of alcohol consumption, dangers of which their limited experience provides little warning.").  Similarly, with regard to the second factor, permitting a private cause of action to be maintained for violations of § 37-0107 may advance the statute's legislative purpose by deterring those who might otherwise, either intentionally or negligently, from improperly storing or releasing hazardous substances into the environment.  *See Sheehy*, *supra*, 541 N.E.2d at 21 ("In making the provision of alcohol to individuals under the legal purchase age a crime, the Legislature plainly intended to create a deterrent for those who might, intentionally or carelessly, engage in the proscribed conduct.  Obviously, permitting civil damage suits for injuries arising from the same conduct would also further this deterrent goal.").  Nevertheless, here, the third factor is not met as permitting a private cause of action would be inconsistent with the legislative scheme.

In particular, the New York Legislature has both the right and the authority to both choose a statute's legislative goals, and to select the methods to be used in

48

effectuating such goals.  *Sheehy*, *supra*, 541 N.E.2d at 21.  Thus, although a private

right of action may be consistent with a statute's basic legislative goal, the action

"should not be judicially sanctioned if it is incompatible with the legislative mechanism

chosen by the Legislature or with some other aspect of the over-all statutory scheme."

*Id*.  The New York Court of Appeals, in considering whether a private right of action

exists under various New York statutes, has held that recognition of a private right of

action would be inconsistent with the legislative scheme in situations where the

Legislature specifically considered and expressly provided for enforcement

mechanisms by a separate regulatory agency.  *See Mark G. v. Sabol*, 717 N.E.2d 1067,

1070-71 (N.Y. 1999) (preventive services provisions of Child Welfare Reform Act

("CWRA") did not create implied private right of action for money damages in favor of

children who allegedly suffered from abuse or neglect in their homes or in foster homes

as recognition of such action would be inconsistent with legislative scheme given

CWRA expressly provides for comprehensive enforcement mechanisms centered on

improved monitoring and penalizing local social services districts with loss of state

reimbursement of funds for failure to provide services or meet state standards); *Carrier*,

*supra*, 667 N.E.2d at 330 (as to statute governing enforcement of statutory scheme for

residential care programs, no private right of action permits seeking appointment of

receiver to operate facility during decertification process as allowing such private right of

action would be inconsistent with statutory scheme giving Department of Social

Services comprehensive responsibility for administration and supervision of residential

care facilities, and would allow private plaintiffs to seek remedy affecting other facility

residents).

Likewise, in the instant case, New York's Department of Environmental Conservation ("DEC"), is expressly charged with promulgating regulations and carrying out New York's environmental policy.  N.Y. Envtl. Conserv. Law § 1-0101, 1-0303(11), and 3-0301.  The DEC is vested with the power, derived from the Legislature, to regulate and interpret its own regulations.  *Power Authority of State of New York v. Williams*, 475 N.Y.S.2d 901, 905 (App. Div. 3d Dep't), *appeal denied*, 471 N.E.2d 462 (N.Y. 1984).  The DEC and New York's Attorney General both have authority to enforce the provisions of Art. 37, including enjoining unlawful acts and recovering civil penalties. N.Y. Envtl. Conserv. Law §§ 71-0401, 71-3701 and 71-3703. Significantly, the DEC has promulgated extensive regulations pertaining to hazardous waste contamination abatement and remediation.  *See*, *e.g.*, N.Y. Comp. Codes R. & Regs., tit. 6, Part 621 (Department of Environmental Conservation General Procedures).  In the instant case, permitting Plaintiffs to maintain a private action against Defendant Olin for a violation of Art. 37, which does not expressly provide for such action, would circumvent the DEC's power to interpret its own regulations, which is not consistent with Art. 37's legislative scheme.  *See Johnson v. Monsanto Chemical Co.*, 129 F.Supp.2d 189, 195 n. 1 (N.D.N.Y. 2001) (noting the absence of any caselaw holding there exists a private cause of action under New York's Environmental Conservation Law).

Nor do either of the two cases Plaintiffs site in support of their argument that a private right of action exists, *i.e.*, *Berens*, *supra*, 694 N.Y.S.2d, and *Emerson Enterprises, LLC*, *supra*, 2004 WL 1454389, require a different result as in both cases, the court failed to consider the three-prong test in finding that a private right of action exists.  *See Berens*, *supra*, 694 N.Y.S.2d at 686 (without considering three factors

necessary to determine whether private right of action exists, court affirmed lower court's denial of defendants' summary judgment motion seeking dismissal of cause of action pursuant to § 37-0107 on basis that relevant regulation "specifically includes petroleum as a hazardous substance the discharge of which is prohibited under that statute," thereby implying the issue of whether such private right of action existed was never presented to the court).  *See also Emerson Enterprises, LLC*, *supra*, 2004 WL 1454389 (observing that *Berens* is not on point as to whether private right of action exists under § 37-0107, yet denying motion to dismiss for failure to state a claim because "*Berens* does clearly suggest that such a private right of action exists, and defendants did not address the issue further in their reply papers.").  Accordingly, neither *Berens*, *supra*, nor *Emerson Enterprices, LLC*, *supra*, is entitled to the deference Plaintiffs urge.

Defendant's motion to dismiss Plaintiffs' First Cause of Action should be GRANTED on the basis that § 37-0107 does not provide for a private right of action.

### c.    Availability of Relief

As a further alternative, the court addresses Defendant Olin's argument that even if Plaintiffs can maintain a private cause of action under Article 37, such action is without any basis as Article 37 does not incorporate any method by which a private citizen may obtain the relief Plaintiffs seek.  Defendant's Memorandum at 15.  Rather, Art. 37 and the regulations promulgated pursuant thereto provide only for administrative, civil and criminal penalties.  *Id*.   Plaintiffs proffer nothing in opposition to this argument.

Defendant Olin references neither the relevant part of Article 37, nor the precise regulations supporting its argument that Article 37 and the relevant regulations provide only for administrative, civil and criminal penalties.  However, given that Plaintiffs do not challenge this assertion, and the fact that the court's research reveals nothing indicating that Article 37 provides for recovering any of the relief Plaintiffs seek, Defendant's motion to dismiss Plaintiffs' First Cause of Action should be GRANTED on this ground.

**2.     Second and Third Causes of Action - N.Y. Nav. Law §§ 176(8) and 181(5)**

Defendant Olin moves to dismiss Plaintiffs' Second and Third Causes of Action under N.Y. Nav. Law §§ 176(8) (Oil Spill law)  and 181(5) (strict liability) because (1) Plaintiffs failed to allege they are eligible to bring such an action and Plaintiffs cannot establish eligibility to bring such an action because Plaintiffs are responsible for the oil discharge; (2) Plaintiffs have failed to allege that the costs incurred were approved by the DEC as required, or that the cleanup and removal of petroleum was in accordance with the National Contingency Plan ("the NCP"); and (3) in any event, insofar as Plaintiffs seek to recover for personal injuries, such injuries are not compensable under New York's Oil Spill Law.  Defendant's Memorandum at 15-17.  Plaintiffs, in opposition, reference caselaw permitting dischargers to bring contribution and indemnification claims against other discharges under § 176(8) and permitting innocent dischargers to bring indemnification claims under § 181(5), and argue that neither New York Navigation Law nor New York caselaw condition recovery for cleanup and remediation expenses upon compliance with the NCP.  Plaintiffs' Response at 11-15.  Plaintiffs,

however, do not contest Defendant's argument that personal injuries are not compensable under New York's Oil Spill Law.  Defendant Olin argues in further support of dismissal that Plaintiffs contend the petroleum discharges resulted from remedial cleanup efforts occurring in 1998 and, thus, Plaintiffs' own allegations establish that Olin cannot be liable as a discharger of petroleum.  Defendant's Reply at 7 (citing November 27, 2002 Report and Recommendation at 31-32 and *Syms II* Complaint ¶¶ 84-85).

### a.   Responsibility for Petroleum Discharge

Defendant Olin argues that Plaintiffs, having been previously found by this court to be partially responsible for some of the petroleum contamination at the Site, are precluded from bringing an action asserting strict liability pursuant to § 181(5), citing *Hjerpe v. Globerman*, 721 N.Y.S.2d 367, 368 (App. Div. 2d Dep't 2001), in support. Defendant's Memorandum at 15-16.  Plaintiffs argue in opposition that the rule prohibiting dischargers from suing other dischargers does not apply to faultless dischargers, citing *White*, *supra*, 650 N.E.2d at 838, in support.  Plaintiffs' Response at 12-13.

N.Y. Nav. Law § 181(1) provides that "[a]ny person who has discharged petroleum shall be strictly liable, without regard to fault, for all cleanup and removal costs and all direct and indirect damages, no matter by whom sustained."  Also,

> [a]ny claim by any injured person for the costs of cleanup and removal and direct and indirect damages based on the strict liability imposed by this section may be brought directly against the person who has discharged the petroleum."

N.Y. Nav. Law § 181(5).

Further, a "claim" may be maintained only be a person "who is not responsible for the discharge, seeking compensation for cleanup and removal costs incurred or damages sustained as a result of a petroleum discharge."  N.Y. Navig. Law § 172(3).  A "discharge" is defined as an "action or omission resulting in the release, spilling, leaking, pumping, pouring, emitting, emptying or dumping of petroleum."  N.Y. Nav. Law § 172(8).  Significantly, "even faultless owners of contaminated lands have been deemed 'dischargers' for purposes of their own section 181(1) liability where they have not caused or contributed to (and thus are not 'responsible for') for the discharge . . . ." *White*, *supra*, 650 N.E.2d at 838.  As such, "once it is established that the property owner caused or contributed to the spill, the property owner will be precluded from seeking indemnification from another discharger."  *Hjerpe*, *supra*, 721 N.Y.S.2d at 368.

Nevertheless, the New York Court of Appeals has held that a faultless or innocent landowner "should not be precluded from suing those who have actually caused or contributed to such damage," as to do so "would significantly diminish the reach of section 181(5)."  *White*, *supra*, 650 N.E.2d at 838.  *See also Green*, *supra*, 754 N.E.2d at  183 ("Navigation Law § 181(5) allows a faultless landowner to seek contribution from the actual discharger, even though the landowner itself is liable as a discharger under section 181(1).").  Nor does the fact that a party's responsibility for contamination prohibits a claim against New York's environmental protection and spill compensation fund preclude a private cause of action against other responsible parties. *White*, *supra*, at 838.  As such, although, in the instant case, Plaintiffs may be deemed "dischargers" for purposes of New York's Navigation Law, such fact will not necessarily preclude Plaintiffs from recovering against Olin if Plaintiffs establish they are "innocent"

or "faultless" landowners, *i.e.*, not actually responsible for the petroleum discharge that contaminated Plaintiffs' land.

In support of dismissal on this point, Olin maintains that this court has already found, and Plaintiffs have alleged facts establishing Plaintiffs are at least partly responsible for the petroleum contamination at the Site.  Defendant's Reply at 7 (citing November 27, 2002 Report and Recommendation at 31-32, and *Syms II* Complaint ¶¶ 84-85).  A plain reading of the referenced portion of the November 27, 2002 Report and Recommendation and ¶¶ 84-85 of the *Syms II* Complaint, however, does not support Olin's argument.

Specifically, in the November 27, 2002 Report and Recommendation, the court observed that Plaintiffs had admitted in Plaintiffs' Fact Statement submitted in support of Plaintiffs' motion for partial summary judgment that in 1998, Government contractors stored fuel oil for vehicles used in the 1998 asbestos removal project in a tank on the Site, that such contractors spilled fuel oil onto the ground while using the tank and that such oil *may* have seeped into the ground through cracks in the concrete.  November 27, 2002 Report and Recommendation at 31-32 (referencing *Syms I* Doc. No. 43) (italics added).  The court further observed that "a Fact Sheet published by the ACOE in November 2000 detailing the [removal] actions" to be conducted at the Site included the removal of "several containers of miscellaneous chemicals and oils . . . found in building at the Somerset property." *Id.* at 32 (internal citations omitted) (bracketed text added). Furthermore, the court acknowledged that "[t]he spillage of fuel oil onto the ground and the discovery of asbestos containing material and containers of chemicals and oil at the Site are further evidence of the *possibility* that contamination occurred at the Site while

under Plaintiffs' ownership, rendering Plaintiffs PRPs under CERCLA." *Id*. (italics added).  A plain reading of these quoted portions of the November 27, 2002 Report and Recommendation establishes that the court referred to the fact that some direct or indirect actions by Plaintiffs may have contributed to the petroleum contamination, yet the court did not reach the issue.

Nor do the cited portions of the *Syms II* Complaint support Olin's assertion.  In particular, Plaintiffs allege in § 84 only that contractors involved in the asbestos containing materials removal contract "destroyed property owned by Plaintiffs on the Site, and the ACOE and its contractors violated the Clean Air Act and other laws and regulations governing asbestos removal," *Syms II* Complaint ¶ 84, but do not mention petroleum contamination.  Further, ¶ 85 alleges that "[t]he studies also revealed the presence of Petroleum Contamination in the ground on the Site (the 'Petroleum Contamination'), which Petroleum Releases were caused by third parties," *Syms II* Complaint § 85, but does not further attempt to establish who caused the petroleum contamination or when such contamination occurred.  As such, the portions of the *Syms II* Complaint Olin cites in support of its argument are also inapposite.

Insofar as Olin seeks to dismiss Plaintiffs' Third Cause of Action seeking contribution under the Oil Spill provisions of New York' Navigation Law, N.Y. Nav. Law § 176(8) specifically provides that

> [n]otwithstanding any other provision of law to the contrary, including but not limited to section 15-108 of the general obligations law, every person providing cleanup, removal of discharge or petroleum or relocation of persons pursuant to this section shall be entitled to contribution from any other responsible party.

N.Y. Nav. Law § 176(8).

The plain language of the statute thus provides Plaintiffs with the right to seek contribution from any other responsible party for the costs incurred in connection with the cleanup or removal of a petroleum discharge.  *Volunteers of America of Western New York v. Heinrich*, 90 F.Supp.2d 252, 259 (W.D.N.Y. 2000) (holding plaintiff could sue former property owners for contribution for costs incurred providing cleanup or removal of petroleum discharge).  Significantly, Olin points to no legal authority to the contrary.

Accordingly, Defendant's motion to dismiss on this ground should be DENIED.


### b.       DEC Approval of Costs and NCP Compliance

Defendant Olin maintains that even if Plaintiffs are permitted to bring claims under N.Y. Nav. Law § 176(8) and 181(5), such claims are nevertheless precluded because Plaintiffs have failed to allege that they have incurred costs responding to petroleum contamination, that the costs incurred were approved by New York's Department of Conservation ("DEC"), as required under N.Y. Nav. Law § 172(5), or that such costs were in compliance with the NCP as required under N.Y. Nav. Law § 176(4).  Defendant's Motion at 16.  Plaintiffs argue in opposition that neither New York Navigation Law nor caselaw requires compliance with the NCP, Plaintiffs' Response at 15, but Plaintiffs fail to address Olin's assertion that the costs allegedly incurred were not approved by the DEC.

As to Olin's argument that Plaintiffs have failed to allege they incurred cleanup and removal costs in accordance with the NCP, N.Y. Nav. Law § 176(4) requires cleanup and removal costs be, "to the greatest extent possible in accordance with the

National Contingency Plan for removal of oil and hazardous substances" as established by the Federal Water Pollution Control Act § 311(d) (33 U.S.C. § 1251 *et seq*.), as amended by the Federal Oil Pollution Act of 1990 (33 U.S.C. § 2701 *et seq*.), or revised under CERCLA § 105 (42 U.S.C. § 9605).  However, "neither New York State Navigation Law, nor New York State case law, conditions the recovery for clean up and remediation expenses upon a plaintiff's compliance with the NCP."  *Dolomite Products Company, Inc. v. Amerada Hess Corporation*, 2004 WL 1125154, * 4 (W.D.N.Y. May 19, 2004).  As such, Defendant's motion to dismiss on this ground should be DENIED.

With regard to Olin's argument that "Plaintiffs have failed to, and are unable to, allege that the costs incurred were approved by the Department of Environmental Conservation as required by Section 172(5)," Defendant's Memorandum at 16, the only case that arguably addresses this point is *Bologna v. Kerr-McKee Corp.*, 95 F.Supp.2d 197, 203-04 (S.D.N.Y. 2000), where the defendants sought to dismiss claims under N.Y. Nav. Law § 181(5) on the basis that the plaintiff had failed to allege it had been authorized by the DEC to conduct a petroleum spill cleanup and to incur "cleanup and removal costs" under § 172(5).  The court held there was an issue of fact as to whether the plaintiff owners of an oil storage facility had, at a meeting with a state official, obtained the requisite state authorization to conduct oil spill cleanup and incur cleanup and removal costs to pursue a claim under New York's Oil Spill Law against the prior owners.  *Bologna*, *supra*, at 203-04.  In reaching this conclusion, the court quoted the relevant portion of § 172(5) as defining cleanup and removal costs as "all costs associated with the cleanup and removal of a discharge including relocation costs . . . incurred by the state or its political subdivisions or their agents or any person with

approval of the department [NYSDEC]." *Bologna*, *supra*, at 203 n. 4 (quoting N.Y. Nav.

Law § 172(5) (ellipses and bracketed text in original).

Significantly, the full text of § 172(5) reads

"Cleanup and removal costs" means all costs associated with the cleanup and removal of a discharge *including relocation costs pursuant to section one hundred seventy-seven-a of this article* incurred by the state or its political subdivisions or their agents or any person with approval of the department.

N.Y. Nav. Law § 172(5) (italics added).

The Legislature's failure to insert any commas renders the precise meaning of § 172(5)

difficult to ascertain.  In particular, if the italicized phrase were set off with commas, it

would be clear to the reader that <u>all</u> costs incurred in connection with a discharge

cleanup and removal had to be approved by the DEC.  The failure to set off the

italicized phrase with commas, however, leaves open the possibility that it is <u>only</u>

relocation costs incurred pursuant to N.Y. Nav. Law § 177-a that require the DEC's

approval.  Nevertheless, the former possible interpretation is more consistent with

related portions of New York's Oil Spill Law, including, for example, N.Y. Nav. Law §

176(7)(a) providing that

[n]othing in this section is intended to preclude cleanup and removal by any person threatened by such discharges, who, *as soon as is reasonably possible, coordinates and obtains approval for such actions with ongoing state or federal operations and appropriate state and federal authorities*.

N.Y. Nav. Law § 176(7)(a) (italics added).

As such, the court, consistent with the court in *Bologna*, *supra*, 95 F.Supp.2d construes

N.Y. Nav. Law § 172(5) as requiring that only those cleanup and removal costs (and

authorized relocation costs) that were incurred with the DEC's approval may be

recovered in an action pursuant to New York's Navigation Law.  As Plaintiffs have failed

to allege that any of the cleanup and removal costs satisfy this requirement, Plaintiffs'
Second and Third Causes of Action should be dismissed for failure to state a claim
under New York law.

Defendant Olin's motion to dismiss the Second and Third Causes of Action
should thus be GRANTED on this ground.


### c.        Personal Injuries

Finally, Defendant Olin seeks to dismiss Plaintiffs' Second Cause of Action
under N.Y. Nav. Law § 181(5) on the basis that New York Navigation Law does not
provide for compensation of personal injuries.  Defendant's Memorandum at 16-17.
Plaintiffs have not responded to this argument.

Initially, the court observes that Plaintiffs do not state in the *Syms II* Complaint
that they are seeking damages for personal injuries in connection with either their
Second or Third Causes of Action.   At least one court has held that personal injuries
are not compensable under N.Y. Navig. Law § 181(5).  *See Strand v. Neglia*, 649
N.Y.S.2d 729, 731 (App. Div. 3rd Dep't 1996) (statute imposing strict liability for
petroleum spills does not create cause of action for personal injury), *leave to appeal
dismissed*, 681 N.E.2d 1306 (1997); *accord Wever Petroleum Inc. v. Gord's Ltd.*, 649
N.Y.S.2d 726, 728 (App. Div. 3rd Dep't 1996).  Accordingly, based on the applicable
New York caselaw, this aspect of Olin's motion to dismiss should be GRANTED*.*


### 3.        Fourth Cause of Action - Negligence

Defendant Olin seeks to dismiss Plaintiffs' Fourth Cause of Action alleging

common law negligence on the basis that Olin, as the prior builder of a manufacturing facility on a parcel of the government's land, owed no duty to Plaintiffs as subsequent landowners and tenants.  Defendant's Memorandum at 17.  Olin thus maintains that Plaintiffs are unable to establish a necessary element for a *prima facie* negligence claim, *i.e.*, that Olin owed a cognizable duty of care to Plaintiffs as a matter of law.  *Id*. Plaintiffs, in opposition, cite no case on point but, rather, argue that the concept of "duty" is to be broadly construed in the context of environmental issues.  Plaintiffs' Response at 15-16.

"As a general rule, premises liability, whether framed in negligence or nuisance, is predicated on the theory that one who either owns, occupies or controls property should bear responsibility for its condition."  *Merrick v. Murphy*, 371 N.Y.S.2d 97, 98 (N.Y. Sup. Ct. Delaware Co. 1975) (citing 46 N.Y.Jur., Premises Liability, § 1). Although the responsibility for a dangerous condition or nuisance existing on real property normally ceases upon transfer or as soon thereafter as the new owner or possessor has had a reasonable opportunity to discovery and remedy any defective condition, exceptions to this general rule exist where, for instance, there is a nuisance on the property.  *Pharm v. Lituchy*, 27 N.E.2d 811, 811-12 (N.Y. 1940).  Nevertheless, there is a distinction between mere negligent maintenance of property and the affirmative acts of negligence in the actual creation of a nuisance or dangerous condition.  *Brown v. Welsbach Corp.*, 93 N.E.2d 640, 641 (N.Y. 1950).

Further, "[t]o establish a prima facie case of negligence, a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom."  *Solomon by Solomon v. City of New York*,

489 N.E.2d 1294, 1294-95 (N.Y. 1985).  Specifically, the New York Court of Appeals has recognized a common law action sounding in negligence against a defendant construction company previously in control of the property for injuries sustained by the plaintiff as a result of the defendant's negligent construction on the property.  *Adams v. White Construction Company*, 87 N.E.2d 52, 52 (N.Y. 1949) (reversing judgment dismissing complaint for failing to state negligence claim and remanding for trial where evidence received in support of plaintiff's case, including that plaintiff sustained injuries when, while working at employer's plant, a slab of concrete fell from ceiling, striking plaintiff on head, was *prima facie* proof of defendant construction company's negligence).  The Court of Appeals thus impliedly found the defendant construction company owed a duty to the future users of the premises to construct a safe building.

As such, in the instant case, neither the fact that Olin did not own the Site, nor is no longer involved in any activity at the Site precludes a common law negligence claim against Olin.  The court also sees little distinction between the facts of *Adams*, *supra*, 87 N.E.2d 52, and the facts as alleged in the instant case, *i.e.*, that Olin, while in control of the Site, owed a duty to future occupants of the Site to safely dispose of hazardous waste located at the site so as not to cause any future injuries at the Site.  Moreover, the *Syms II* Complaint sufficiently alleges facts which, if true, would establish that Olin acted negligently in the actual creation of a dangerous condition on the Site.  *Brown*, *supra*, 93 N.E.2d at 641.

Defendant's motion to dismiss Plaintiffs' Fourth Cause of Action for common law negligence should be DENIED.

### 4.      Fifth Cause of Action - Strict Liability

Defendant Olin asserts Plaintiffs' Fifth Cause of Action for strict liability should be dismissed because New York law does not provide for strict liability as a vehicle for a subsequent property owner to recover damages for contamination caused by a former owner or lessee.  Defendants' Memorandum at 18.  As such, Olin maintains there is no basis on which to hold Olin, as a government contractor that built a manufacturing facility on the Site, liable for contamination that occurred during the Government's ownership of the property.  *Id*.  Plaintiffs argue in opposition that courts in New York have yet to address this question and that the case on which Olin relies in support is misquoted.  Plaintiffs' Response at 16-17.

Specifically, Olin asserts in support of dismissal that "[u]nder New York Law, however, the strict liability doctrine may not be employed 'as a vehicle for a subsequent property owner to recover damages for contamination of the property by a former owner or lessee.'"  Defendant's Memorandum at 18 (quoting *55 Motor Avenue Company v. Liberty Industrial Finishing Corp.*, 885 F.Supp. 410, 423 (E.D.N.Y. 1994)).  As such, according to Olin, Plaintiffs, as subsequent owners, cannot maintain their Fifth Cause of Action for strict liability against Olin, a former lessee.  Defendant's Memorandum at 18. Olin, however, quotes *55 Motor Ave. Co.*, *supra*, out of context.

In *55 Motor Ave. Co.*, *supra*, the court, faced with a motion to dismiss a cause of action for strict liability under New York common law brought by a current landowner against prior owners and occupiers of property for cleanup of hazardous waste caused by such former owners and occupiers, stated in *dicta* that "[t]he Courts in New York have not addressed this issue of whether the strict liability doctrine may be employed as

a vehicle for a subsequent property owner to recover damages for contamination to the property by a former owner or lessee." *55 Motor Ave. Co.*, *supra*, 885 F.Supp. at 423. The court, however, refrained from predicting "that the New York Court of Appeals would apply the doctrine of strict liability in this type of action," absent "any clear indication or trend in the New York case law suggesting [the same]." *Id*. Accordingly, *55 Motor Ave. Co.*, *supra*, does not support Olin's argument.

The court's exhaustive research reveals no case in which a common law claim for strict liability has been maintained by a current landowner against a defendant based on the defendant's prior actions at the property, while owned by the government, involving the disposal of hazardous waste, and Plaintiffs point to none.  Nevertheless, the generation and disposal of hazardous waste has been held in other contexts to be an abnormally dangerous activity thus supporting strict liability.  *See e.g.*, *New York v. Shore Realty Corp.*, 759 F.2d 1032, 1042 (2d Cir. 1985) (observing that Congress intended CERCLA legislation to impose strict liability for environmental pollution); and *Schenectady Chemical, Inc.*, *supra*, 459 N.Y.S.2d at 976-77 (holding dumping of chemical waste which migrated to other property to be abnormally dangerous activity which could support claim for public nuisance).  That New York Navigation Law provides that "[a]ny person who has discharged petroleum shall be strictly liable, without regard to fault, for all cleanup and removal costs and all direct and indirect damages, no matter by whom sustained," N.Y. Nav. Law § 181(1), without any restriction as to when or where the discharge initially occurred, is consistent with a broad construction of strict liability in the context of imposing liability for harm resulting from such discharge.

The New York Court of Appeals has observed that "[i]mposing strict liability upon

landowners who undertake abnormally dangerous activities in not uncommon."

*Doundoulakis v. Town of Hempstead*, 368 N.E.2d 24, 27 (N.Y. 1977) (citing Prosser,

Torts (4th ed.), § 78)).  Further, the policy considerations pertaining to strict liability "may

be simply put: those who engage in activity of sufficiently high risk of harm to others,

especially where there are reasonable even if more costly alternatives, should bear the

cost of harm caused the innocent."  *Doundoulakis*, *supra*, (citing Restatement, Torts 2d,

§ 519, Comment d; and *Spano v. Perini Corp.*, 250 N.E.2d 31, 34-35 (N.Y. 1969)).[12]

Furthermore, recent caselaw demonstrates that common law strict liability claims

seeking indemnification, contribution and restitution from defendants based on the

discharge of chemical or hazardous waste have been dismissed as preempted by

parallel CERCLA claims seeking the same relief, but the common law strict liability

claims were permitted to proceed insofar as other relief not available under CERCLA

was sought. *See e.g.*,*Volunteers of America of Western New York*, *supra*, 90 F.Supp.2d

at 257-58 (holding plaintiff's state common law claims, including strict liability for

abnormally hazardous activity, not preempted by CERCLA insofar as relief not available

under CERCLA is sought).  *Cf. Bedford Affiliates v. Sills*, 156 F.3d 416, 426-27 (2d Cir.

1998) (determining CERCLA was not legislatively "intended to be a comprehensive

regulatory scheme occupying the entire field of hazardous wastes," and, thus, does not

completely preempt all state claims for indemnification and contribution to the extent

---

[12] Although in *Doundoulakis*, *supra*, the New York Court of Appeals discussed imposition of strict liability upon landowners who undertake abnormally dangerous activities in the context of an appeal of a jury verdict in the landowner's favor where the trial court precluded submission on a negligence theory and instead, submitted to the jury only on the strict liability theory which was not raised by the parties, the Court of Appeals reversed on the basis that the record failed to establish that the activity at issue, *i.e.*, a hydraulic landfilling project, was abnormally dangerous and a new trial was needed to resolve issue of liability.  *Doundoulakis*, *supra*, 368 N.E.2d at 29.

that relief not available under CERCLA is sought).  *Compare Scribner v. Summers*, 84 F.3d 554, 559 (2d Cir. 1996) (on appeal following bench trial after which District Judge granted plaintiffs response costs under CERCLA, but found plaintiffs failed to prove common law causes of action under New York law for strict liability, trespass or private nuisance, based on hazardous waste generated by metal treatment business located on adjacent land, Second Circuit Court of Appeals reversed as to the trespass and nuisance claims, but "decline[d] to reach the issue of strict liability," and took no position on that issue).

The court thus respectfully disagrees with the court's determination in *55 Motor Ave. Co.*, *supra*, 885 F.Supp. at 423, that there is an absence of "any clear indication or trend in the New York case law suggesting" that the "Court of Appeals would apply the doctrine of strict liability in this type of action."  As such, Defendant's motion to dismiss Plaintiffs' Fifth Cause of Action alleging strict liability should be DENIED.

### 5.        Seventh Cause of Action - Private Nuisance

Defendant Olin urges the court to dismiss Plaintiffs' Seventh Cause of Action asserting a claim for private nuisance on the basis that (1) "the offending condition [underlying a private nuisance claim] must be one that exists, not on the plaintiffs' land, but on the defendant's, and the injury must be to persons outside of defendant's premises;" (2) the nuisance doctrine does not provide for a claim by a subsequent property owner against former owners or tenants upon discovering contamination on the property; and (3) even assuming a nuisance existed, no remedy exists for Plaintiffs as subsequent property owners, based on conditions created on the property prior to

66

Plaintiffs' obtaining ownership of the property.  Defendant's Memorandum at 18-19.

Plaintiffs assert in opposition that Olin's argument in support of dismissal ignores the

fact that some of the petroleum and nonradioactive contamination on the Site did not

originate at the Site but, rather, migrated from other portions of the LOOW and that Olin

disposed of contaminants both at the Site and other dumping areas located off the Site.

Plaintiffs' Response at 19.[13]

> In order to establish liability under a private nuisance theory, plaintiff must show that defendant's conduct:
>> "is a legal cause of the invasion of the interest in the private use and enjoyment of land and such invasion is (1) intentional and unreasonable, (2) negligent or reckless, or (3) actionable under the rules governing liability for abnormally dangerous conditions or activities."

*Scribner*, *supra*, 84 F.3d at 559 (quoting *Copart Industries, Inc. v. Consolidated Edison Company of New York, Inc.*, 362 N.E.2d 968, 971 (N.Y. 1977)).

Historically, the law of nuisance has "evolved as a means of resolving conflicts between

neighboring contemporaneous land users."  *55 Motor Ave. Co.*, *supra*, 885 F.Supp. at

421 (citing *Philadelphia Elec. Co. v. Hercules, Inc.*, 762 F.2d 303, 314 (3d Cir.), *cert.*

*denied*, 474 U.S. 980 (1985)).  Indeed, "[t]he essence of a complaint in nuisance is that

a condition is maintained on one property which is an illegal burden or servitude upon

another."  *Zamzok v. 650 Park Ave. Corp.*, 363 N.Y.S.2d 868, 873 (Sup. Ct. N.Y. Co.

1974)  (citing N.Y. Jur. 2d Nuisances § 20).  "Traditionally, nuisance claims in New York

---

[13] Plaintiffs draw the court's attention to the fact that Olin has not argued that Plaintiffs' Sixth Cause of Action for Public Nuisance and Eighth Cause of Action for Trespass should be dismissed, asserting an argument in favor of finding that the Sixth and Eighth Causes of Action state claims for relief. Plaintiffs' Response at 19-21.  Because Olin has not argued to the contrary, the court does not consider whether Plaintiffs' Sixth and Eight Causes of Action state claims for relief, other than as discussed above, Discussion, *supra*, at 15-19, 33-42, regarding whether such claims are time-barred under the relevant statutes of limitations, as well as whether the injunctive relief Plaintiffs request in connection with such claims is available as a matter of law.

have been restricted to cases involving two, separately owned pieces of property." *55 Motor Ave. Co.*, *supra*, at 421.

Significantly, courts have "consistently rejected the efforts of property owners who discover contamination of their properties to maintain private nuisance claims against the former owners or lessees." *55 Motor Ave. Co.*, *supra*, 885 F.Supp. at 421 (citing cases). *See also Nashua Corporation v. Liberty Mutual Insurance Company*, 1997 WL 204904 (N.D.N.Y. April 15, 1997) ("private nuisance does not provide a remedy to a subsequent owner of property for a nuisance created by a prior owner."). The caselaw thus establishes that a cause of action for a private nuisance lies only between contemporaneous owners of separate parcels of real property.   Furthermore, in the absence of any indication by the New York Court of Appeals, let alone any other New York court, extending the viability of a private nuisance claim to circumstances similar to those presently before this court, *i.e.*, to permit a cause of action for private nuisance by the premises' current owner against a prior lessee of the premises, this court will not do so.

As such, Defendant's motion to dismiss Plaintiffs' Seventh Cause of Action should be GRANTED insofar as Plaintiffs allege a private nuisance against Olin based on Olin's actions on both the subject premises, as well as on neighboring parcels, occurring prior to Plaintiffs' ownership of the premises.

### 6.       Ninth and Tenth Causes of Action - Implied Indemnification, Contribution and Restitution

Defendant Olin seeks to dismiss Plaintiffs' Ninth and Tenth Causes of Action for

common law implied indemnification, contribution and restitution on the basis that

CERCLA preempts such common law claims.  Defendants' Memorandum at 19.

Alternatively, Olin reasserts the same argument discussed above, Discussion, *supra*, at

19-33, that insofar as Plaintiffs seek implied indemnification and restitution, Plaintiffs

have failed to allege Plaintiffs discharged a duty Olin owed to third parties, or, with

regard to the restitution claim, that the things or services Plaintiffs supplied in response

to the contamination were immediately necessary to satisfy the requirements of public

decency, health or safety, and further, that in any event, to the extent Plaintiffs'

indemnification claims seek recovery of future costs, New York law limits indemnity to

recovering expenses already incurred.  *Id*. at 19-20.  Plaintiffs assert in opposition that

although CERCLA does preempt some common law and restitution claims, court have

limited the preemption of common law claims to the extent that CERCLA provides for

the damages sought, thereby permitting common law indemnification and contribution

for damages not recoverable under CERCLA.  Plaintiffs' Response at 5-6.  Plaintiffs do

not separately address Olin's alternative arguments as to these claims.

> The Second Circuit Court of Appeals has held that

> instituting common law restitution and indemnification actions in state court
> would bypass [CERLA's] carefully crafted settlement system, creating an actual
> conflict therefore between CERCLA and state common law causes of action.
> Consequently, CERCLA preempts the state law remedies of restitution and
> indemnification.

*Bedford Affiliates*, *supra*, 156 F.3d at 427.

Nevertheless, the Second Circuit recognizes that CERCLA does not prevent a plaintiff

from recovering damages under state law that are not duplicative of the damages,

including some forms of contribution and indemnification, recoverable under CERCLA.

*Id*. *See also  Volunteers of America of Western New York*, *supra*, 90 F.Supp.2d at 257-58 (citing *Minyard Enterprises, Inc. v. Southeastern Chemical and Solvent Co.*, 184 F.3d 373 (4th Cir. 1999)).

Significantly, cleanup costs for petroleum spills are not recoverable under CERCLA.  *Volunteers of America of Western New York*, *supra*, 90 F.Supp.2d at 258. As such, insofar as recovery of cleanup costs incurred in connection with the alleged petroleum discharges, Plaintiffs' Ninth and Tenth Causes of Action for common law implied indemnification, contribution and restitution are not preempted.  Moreover, the Second Circuit, by granting summary judgment in favor of Olin on the majority of Plaintiffs' CERCLA claims, has removed CERCLA as a source of recovery as to those claims, including the claims for recovery of costs for routine physical maintenance of the Site, repair of damage caused during cleanup, costs associated with legal counsel's work, and private monitoring of individual's health, although not as to costs incurred by Plaintiffs in admitting government officials and contractors to the contaminated site as a fact issue remained as to whether such costs were necessary response costs under CERCLA.  *Syms I*, *supra*, 408 F.3d at 102-06.  As such, common law claims of implied indemnification, contribution and restitution are not preempted by CERCLA as to the claims for which the Second Circuit has held Plaintiffs may not recover under CERCLA and, further, should Plaintiffs ultimately fail to establish that the costs incurred admitting government officials and contractors to the contaminated site do not qualify as necessary CERCLA response costs, then recovery of such costs based on common law implied indemnification, contribution and restitution claims also  will not be preempted by CERCLA.

Olin's motion to dismiss Plaintiffs' Ninth and Tenth Causes of Action on the basis of CERCLA preemption should thus be DENIED.

As stated, Olin alternatively argues with regard to the common law claims for implied indemnification and restitution, that Plaintiffs have failed to allege Plaintiffs discharged a duty Olin owed to third parties, and, with regard to the restitution claim, that the things or services Plaintiffs supplied in response to the contamination were immediately necessary to satisfy the requirements of public decency, health or safety, and further, that to extent that the indemnification claims seek recovery of future costs, New York law limits indemnity to recovering expenses already incurred.  Defendant's Memorandum at 19-20.  The court, however, has previously addressed this argument. Discussion, *supra*, at 19-33.  The court accordingly does not readdress the argument here.

### 2.   Motion to Strike

Defendant Olin alternatively moves to strike as immaterial and irrelevant several paragraphs of the *Syms II* Complaint containing allegations regarding the actions of Dr. Love, the United States Government, Fort Conti, Chem-Trol, and New York State Department of Health.  Defendant's Memorandum at 21.  Olin specifically seeks to strike the allegations contained in (1) ¶¶ 13-16, regarding historical use of the property by the United States military prior to Olin's activities at the property; (2) ¶¶ 25-31 regarding the actions, inactions, disclosures and level of knowledge of the United States Government, and Fort Conti; (3) ¶¶ 34-37, concerning the transfer of other parcels of property not involved in the instant litigation as well as regarding a deed

restriction to which Olin was not a party; (4) ¶¶ 48-74, regarding radioactive contamination, the actions of other parties in response to such contamination, and damages arising out of such contamination; and (5) ¶¶ 80, 82, 84 and 91, regarding the adequacy of actions taken by the United States Government in response to the contamination at the Site and whether the Government complied with the terms of agreements between the Government and John Syms.  *Id*. at 21-23.

According to Olin, such allegations make no reference to any actions by Olin, nor to the non-radioactive contamination of Plaintiffs' property but, rather, allege harm to Plaintiffs caused by other parties, damages resulting from the actions of other parties, and other sources of contamination; as such, Olin moves to strike these allegations as immaterial and irrelevant to the claims pending against Olin.  *Id*. at 21-23.  Finally, Olin objects to Plaintiffs' referral, in ¶¶ 1, 3, 24, 39, 121, 133 and 138 of the *Syms II* Complaint, to two alleged former disposal sites as the "Olin Superfund Sites," as erroneous given that neither such site is listed as a Superfund site. *Id*. at 23 (citing U.S. Environmental Protection Agency, Superfund Information Systems, CERCLIS Database (last updated May 13, 2004), http://cfpub.epa.gov/supercpad/cursites/srchsites.cfm, and the New York Registry of Inactive Hazardous Waste Disposal Sites).  Olin maintains the term "Superfund Site" is "a specific term of art that implies that a site is a part of the federal Superfund Program which is comprised of this nation's worst hazardous waste sites," thereby rendering Plaintiffs' use of the term as "impertinent and unduly prejudicial." *Id*. at 23-24.

In opposition to the motion to strike, Plaintiffs maintain that the various paragraphs Olin seeks to strike "are necessary to adequately represent to the court the

complete sequence of events on the site." Plaintiffs' Response at 21. According to Plaintiffs, such allegations are relevant to when different types of contamination were discovered for statute of limitations purposes, and to what costs Plaintiffs incurred in response to contamination caused by different parties. *Id*. Plaintiffs further maintain that the references to the Superfund Sites need not be stricken as the term is also applied to contaminated sites within New York that have been classified as either Inactive or Active Hazardous Waste Disposal Sites. *Id*.

Preliminarily, the court observes that when the instant motion was filed, the claims presently before the court were part of *Syms II*, the separate state action filed in New York Supreme Court, Niagara County, after identical claims were dismissed from *Syms I* in federal court. As such, although some of the allegations contained in the *Syms II* Complaint may, without reference to the federal claims contained in the *Syms I* Complaint, filed in federal court, seem irrelevant and prejudicial, now that the two actions have been consolidated, the paragraphs of the *Syms II* Complaint Olin seeks to strike as immaterial and prejudicial, when viewed in connection with the federal claims asserted in the *Syms I* Complaint and remaining in the consolidated action, are not so irrelevant or prejudicial as to require striking them. Furthermore, insofar as the *Syms II* Complaint contains allegations referring to the Superfund Sites, such references are fairly construed as to New York's "Superfund" regulatory scheme and, thus, need not be stricken. *See*, *e.g.*, N.Y. Envtl. Conserv. Law § 23-1305 (referring to state superfund).

Defendant Olin's motion to strike should be DENIED.

## **CONCLUSION**

Based on the foregoing, Defendant's motion (Doc. No. 4) should be GRANTED insofar as Defendant seeks to dismiss all the claims asserted against Defendant Olin pursuant to New York law, and should be DENIED insofar as Defendant seeks, in the alternative, to strike portions of the *Syms II* Complaint as irrelevant, immaterial, impertinent and highly prejudicial.  Alternatively, Defendant's motion to dismiss should be GRANTED in part and DENIED in part insofar as Defendant seeks to dismiss all the claims asserted against Defendant Olin pursuant to New York law, and should be DENIED insofar as Defendant seeks, in the alternative, to strike portions of the *Syms II* Complaint as irrelevant.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      March 24, 2006
            Buffalo, New York

74

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

<u>**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**</u>

*Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:      March 24, 2006
            Buffalo, New York